**EXHIBIT I**

Robert D. Luskin (D.C. Bar # 293621)
PATTON BOGGS LLP
2550 M Street NW
Washington, DC 20037
(202) 457-6190
(202) 833-1971 Facsimile

Attorney for the LIUNA GEB Attorney,
W. Douglas Gow and Kendall Ludwig

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DANNY ATTENBOROUGH, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Misc. # 1:06-MC-00006-JR ) ) |
| CONSTRUCTION AND GENERAL BUILDERS LABORERS LOCAL 79, | ) ) ) |
| Defendant. | ) ) ) |

## DECLARATION OF ROBERT D. LUSKIN

I, Robert D. Luskin, for my declaration state as follows:

1. I am the Laborers' International Union of North America's ("LIUNA") General Executive Board ("GEB") Attorney and have served in that capacity since approximately 1995.

2. In November 1994, the United States Attorney for the Northern District of Illinois presented LIUNA with a draft civil complaint under the Racketeer Influenced and Corrupt Organizations Act alleging, in substance, that for a substantial period of time, the organized crime entity known as La Cosa Nostra ("LCN") had a corrupting influence over LIUNA and its affiliates; and that the officers of LIUNA had failed to fulfill their fiduciary purpose to see that the union was

free of corruption and to ensure that members could exercise their rights to participate fully and freely in union affairs.

3. In the course of negotiations over how to address the government's concerns, the General Executive Board of LIUNA amended its Constitution to adopt an Ethical Practices Code, which set standards of conduct for all union members, officers and employees, including prohibitions on knowing association with the LCN or knowingly permitting the LCN to influence union affairs. The General Executive Board also adopted an Ethics and Disciplinary Procedure, which established four independent officers – an Inspector General, GEB Attorney, Independent Hearing Officer, and Appellate Officer -- with complete and independent authority to investigate allegations of corruption, bring trusteeship complaints or disciplinary actions, adjudicate disciplinary complaints and trusteeships, and provide for limited appellate review of certain of those findings and conclusions.

4. As the GEB Attorney, it is my responsibility under the Ethics and Disciplinary Procedure to initiate disciplinary prosecutions against union members who have violated either the Ethics and Disciplinary Procedure or the Ethical Practices Code. I am also authorized to establish trusteeships or supervisions over LIUNA entities when circumstances warrant. Another duty of the GEB Attorney is to publish a report in LIUNA's magazine, *The Laborer*. In that report, the GEB Attorney provides all LIUNA members with updates on the commencement and the conclusion of internal union litigation, along with occasional explanations of union policies or rule changes. The GEB Attorney's reports contain no confidential information. I have attached as Attachment A true and correct copies of a sample of GEB Attorney reports published in *The Laborer*.

5. LIUNA appointed W. Douglas Gow to serve as its Inspector General upon his completion of a long and distinguished record of service with the Federal Bureau of Investigation. Consistent with the authority granted to him under the Ethics and Disciplinary Procedure, the

2

Inspector General coordinates the investigation of all matters arising under the Ethical Practices Code and the Ethics and Disciplinary Procedure, including the knowing association of union members with La Cosa Nostra, and violations of federal and state labor law. The Inspector General oversees a team of investigators composed primarily of former Special Agents of the FBI, the Department of Treasury and the Department of Labor. The Inspector General's staff conducts investigations and reports its findings to the Inspector General, almost always in writing. The intelligence developed by the Inspector General is supplemented by the government, which provides the Inspector General with access to materials and witnesses when such information would further the aims of the reform program and is permitted by law. Once the Inspector General has acquired evidence that he believes sufficient to warrant prosecution as a disciplinary matter or for imposition of a trusteeship or supervision, he will report such matters to the GEB Attorney for the latter's consideration.

6. Since the inception of the reform program, the GEB Attorney has retained a Case Administrator to assist with the implementation of LIUNA's job referral rules, which were also a creation of the reform program. Presently, the position is held by Kendall Ludwig. In her capacity as Case Administrator, Ms. Ludwig receives calls and letters from LIUNA members who wish to report violations of the job referrals rules or who seek an explanation of the rules and how the rules are to be applied. It is also the Case Administrator's responsibility to assist the Inspector General with investigations of potential job referral violations and to assist the GEB Attorney with any prosecution of related disciplinary or trusteeship actions. In the course of her duties, the Case Administrator receives, has access to and develops confidential investigative reports regarding job referral investigations.

7. Along with the commencement of the reform program, LIUNA and the United States entered into a three-year agreement, dated February 13, 1995, under which the United States

3

agreed to forbear from filing any civil complaint for a period of at least 90 days, while LIUNA implemented its internal reform program. The agreement further provided that, at any time after 90 days, if the Assistant Attorney General for the Criminal Division concluded, in her sole discretion, that imposition of a consent decree was necessary or desirable, the parties would file a complaint and consent decree that provided for the appointment of court officers to oversee the affairs of LIUNA and undertake efforts to eradicate organized crime influence.

8. On January 14, 1998, LIUNA and the United States extended the agreement until January 31, 1999, and thereafter entered into a new agreement effective through January 31, 2000. On January 18, 2000, the United States and LIUNA entered into a further agreement under which LIUNA agreed, *inter alia*, to continue its internal reform programs for a period until approximately 2006 and to seek the prior consent of the United States before making any material change to the programs or substituting any of the independent officers. The United States retained the right to enforce these obligations through an injunction, but agreed to give up the right to seek the appointment of court officers through imposition of a consent decree. I have attached as Attachment B a true and correct copy of the January 18, 2000 agreement between the United States and LIUNA.

9. Since 1995, the United States has exercised close scrutiny over the conduct of the LIUNA internal reform program and, in particular, is familiar with all significant investigations, disciplinary actions, and trusteeships. At no time during this period did the government find it necessary to file the consent decree provided for under the prior agreements. Furthermore, the United States and LIUNA have cooperated in efforts by the LIUNA Inspector General and GEB Attorney to eliminate organized crime influence and other forms of corruption in LIUNA through individual disciplinary actions and through trusteeships. The United States has at no time directed

4

or controlled the efforts of the independent officers, but has furnished such assistance as it might lawfully provide in identifying corrupt individuals and entities.

10.  In the January 18, 2000 agreement with LIUNA, the United States explicitly affirmed "that the Internal Reform Programs have been effective and have achieved substantial and significant success in eliminating corrupting influence within LIUNA and ensuring that members of LIUNA may freely and democratically participate in its affairs . . . ." *Agreement Between LIUNA and the United States, dated January 18, 2000* at 2 (See Attachment B). Moreover, the Ethics and Disciplinary Procedure, its adoption, and the integrity and independence of its processes and officers have been affirmed in a number of federal courts including the United States District Court for the Northern District of Illinois and the United States Court of Appeals for the Seventh Circuit. *Serpico v. LIUNA*, Nos. 95C614, 94C1573, 95C1725, 1996 WL 41674 at *5, 151 L.R.R.M. (BNA) 2460 (N.D. Ill. Feb. 1, 1996), *aff'd*, 97 F.3d 995 (7th Cir. 1996). Any interference with the LIUNA internal reform programs would undermine their efficacy and subvert the rights of all union members.

11.  LIUNA has taken the consistent position that documents concerning investigations conducted by the Inspector General and GEB Attorney are subject to the work product and attorney-client privileges. Additionally, we have declined to produce documents that would disclose complaints filed with the Inspector General or with my office.

12.  We have zealously protected the identity of individuals who have filed complaints with the Inspector General and the GEB Attorney out of a well-founded concern that disclosure might expose these individuals to retaliation or even physical violence and would discourage individuals from reporting wrongdoing.

13.  My concerns with respect to investigations of Defendant Construction and General Builders Laborers' Local 79 ("Local 79") are particularly acute in light of its past history. The Local

5

itself, which is a constituent local within the Mason Tenders District Council of Greater New York and Long Island, was created in the mid-1990's via a merger of numerous other LIUNA local unions that were plagued by a longstanding and significant history of LCN domination. The details of Local 79's history are recounted in *Mason Tenders Local Union 59 v. LIUNA*, 924 F. Supp. 528 (S.D.N.Y. 1996) and *Mason Tenders District Council of Greater New York v. LIUNA*, 884 F. Supp. 823 (S.D.N.Y. 1995). I have attached as Attachments C and D true and correct copies of those cases.

14.    I would note, however, that the recent litigation involving the placement of Local 79 under supervision by LIUNA was not, so far as the investigation was able to determine, connected to organized crime, nor was the investigation or prosecution of that matter by my office in any respect connected to the job referral system of Local 79. As is clear from the memorandum opinion of the LIUNA Independent Hearing Officer resolving that matter, Local 79 was placed under supervision primarily due to the financial misconduct of various officers with respect to union vendors. I have attached as Attachment E a true and correct copy of the Independent Hearing Officer's memorandum opinion.

15.    On November 7, 2005, Plaintiffs in the above-captioned matter served subpoenas upon Inspector General Gow, Case Administrator Ludwig and me in my capacity as GEB Attorney. In identical terms, each of the three subpoenas, which were returnable on December 7, 2005, call for the production of all documents relating to (a) "all complaints regarding the hiring hall" at Local 79, from 1998 to the present; (b) "any investigations and their results regarding Local 79's hiring hall" for the same period; (c) "any investigations into cronyism, nepotism, or patronage at Local 79;" and (d) "the investigation and determination to place Local 79 under supervision." (Plaintiffs' Motion to Compel, Ex. 1, Schedule A.) This request essentially encompasses everything in the files of the GEB Attorney and Inspector General regarding Local 79, such as confidential complaints, witness interviews, reports and recommendations from the Inspector General to the GEB Attorney and

6

related memoranda. Disclosure of investigative interviews and reports would discourage individuals from reporting wrongdoing and, thus, would have a significantly harmful impact on the LIUNA reform process.

16. As the GEB Attorney, my duties under LIUNA's Ethics and Disciplinary Procedures require the Office of the GEB Attorney to investigate and prosecute violations of the LIUNA constitution or any other illegal or unethical conduct. Necessarily, that obligation includes gathering information from LIUNA members and other sources, investigations that are conducted by the Inspector General and his staff. The Inspector General shares his findings with the Office of the GEB Attorney, in order to allow the Office of the GEB Attorney to determine whether to bring charges and what charges to bring.

17. In addition, and more importantly for the continued viability of the reform process, the investigative materials in the files of the Inspector General are often gathered only with assurances of complete confidentiality. Particularly in a union like LIUNA, which has been dogged by the influence of organized crime, it is critical that potential witnesses be able to say what they know without fear of retribution. Disclosure of investigators' files would retroactively revoke the investigator's promise to protect the confidentiality of informants. Only the complete confidentiality of investigations can protect witnesses and members of the union who are willing to provide information and cooperate with the reform process, thus ensuring the integrity of investigations. Since the LIUNA reform process began, no federal court has ordered the disclosure of confidential investigative materials or information from the office of the Inspector General, nor has disclosure been compelled in any internal proceeding before the Independent Hearing Officer or the Appellate Officer.

18. On November 14, 2005, I provided to counsel for the Plaintiffs a written objection to the subpoenas under Federal Rule of Civil Procedure 45(c)(2)(B). (See Exhibit 2 to Plaintiffs'

Motion to Compel.) As I expressed more specifically in my letter to Plaintiffs' counsel, it is my view that the discovery sought by the Plaintiffs in this case is precluded by the work product doctrine and attorney-client privilege. The investigation of the Defendant was conducted and the materials prepared in anticipation of litigation by the Office of the GEB Attorney. That litigation includes internal disciplinary and trusteeship proceedings under the Ethics and Disciplinary Procedures, and federal court review of those proceedings.

19. Here, the investigators obtained statements and made reports directly to me, to enable the Office of the GEB Attorney to perform the legal work for LIUNA that I was hired to do. The process is a confidential one. Because the discovery sought in this case involves such confidential communications, whether to or from the investigators, the Inspector General or the Office of the GEB Attorney, that information should not be disclosed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 1, 2006.

                                                                                                            _____
                                                                                                            Robert D. Luskin