# REPORT of the GEB Attorney

## New Hiring Hall Guidelines for U.S. Affiliates

After four years of hiring hall reform and monitoring, the LIUNA GEB has revised the Amended Job Referral Rules to allow Local Unions and their memberships greater freedom to dictate their own referral practices.

The new Hiring Hall Guidelines preserve the core principles of the original rules, but leaves procedural and administrative decisions to the discretion of each Local Union. Under the new Hiring Hall Guidelines, Local Unions are still required to notify all applicants of all rules, policies and the criteria for referral, in writing; refer applicants in order, based on objective criteria; apply all rules consistently and uniformly; maintain detailed referral records; and allow applicants access to those records.

Under these new Hiring Hall Guidelines, Local Unions may now determine for themselves whether to operate in-person or telephone referral systems; whether to penalize applicants for refusing or failing to be available for referral; and how to re-register members following a referral. Furthermore, Local Unions are now free to define other operational policies not specifically mentioned in the revised rules. However, before a Local Union can adopt new rules, they must secure the approval of the Local Union membership through a vote, as well as submit the proposed rules to the GEB Attorney for review.

The requirements and procedures for implementing new referral rules are explained in detail below. Following the new Hiring Hall Guidelines are answers to some of the questions you may have about these changes. ∎

## Hiring Hall Guidelines
### Laborers' International Union of North America

**1. Requirements and Review Process**

Each Local Union in the United States shall adopt written referral rules conforming to the revised Hiring Hall Guidelines, set forth below. The purpose of these Hiring Hall Guidelines is to maintain and administer a processing system for referral of applicants to employment in a fair and equitable manner, and to establish records and procedures which will be adequate to disclose fully the basis on which each referral is made.

All rules and policies pertaining to the referral of applicants must be written and prominently posted in the Local Union office and hiring hall. All referral issues not specifically mandated by the following Guidelines must be individually approved by membership vote at two consecutive meetings and then submitted, with the relevant minutes, for GEB Attorney review and approval.

Once approved by the GEB Attorney, all referral rules will remain in effect indefinitely; renewed approval is not required.

**2. Non-Discrimination in Job Referrals**

Referrals to jobs will be on a nondiscriminatory basis and will not be based on, or in any way affected by, race, gender, national origin, sexual orientation, disability, religion, or lawful union-related activity.

**3. Effect on Hiring Hall Guidelines**

All referrals by a Local Union to jobs within its jurisdiction shall be made in accordance with these Guidelines except to the extent that any Guidelines contained herein conflicts with a term of collective bargaining agreement. Any Local Union that concludes that these Guidelines conflict with the term of a collective bargaining agreement shall submit a Notice of Conflict citing the relevant sections of the agreement and the Hiring Hall Guidelines to the GEB Attorney. The GEB Attorney shall advise the Local Union in writing whether such a conflict exists.

**4. Registration of Availability for Referral**

A. An applicant seeking referral to a job must file with the Local Union a signed and dated referral form providing name, telephone number, social security number, and stating any skills the applicant possesses and the jobs the applicant is able to perform, including any relevant licenses or certifications. Blank referral forms will be available at the Local Union. The Local Union will compile an out-of-work list, consisting of the applicants who have registered their availability for referral, listed in order of seniority according to their date of registration. The Local Union may confirm any prior employment, licenses, or certifications listed by an applicant. The Local Union may challenge an applicant's representations concerning his prior employment, licenses, or certifications. If the Local Union makes a challenge, it must promptly notify the applicant in writing, who shall have five business days from the receipt of this notice in which to respond and to submit any relevant information. Any applicant who remains aggrieved by a final decision of the Local Union may file a protest with the Independent Hearing Officer, who shall finally resolve all such disputes.

B. Apprentices shall be referred under a separate out-of-work list, in order according to the requirements of the apprenticeship program.

C. Only applicants who are not currently employed at the trade may register their availability for referral.

D. Applicants shall be removed from the out-of-work list upon receiving a job referral, subject to the Local Union's stated short-term referral policy (this may include instituting a policy whereby applicants are removed from the referral list after a single referral, regardless of the duration of the job). An applicant who is laid off or discharged from a job must again register his or her availability for referral by telephone, postcard, or in person, in accordance with the Local Union's written policy, in order to be included on the out-of-work list.

E. Applicants must also register their availability for referral periodically (once each month, ninety days, or half year), in accordance with the Local Union's written policy.

**5. Referral Procedure**

A. Applicants on the out-of-work list shall be referred to jobs in the order in which they have registered their availability for referral, with the first registered applicant referred first, provided that the applicant has the qualifications requested by the employer.

B. Requests by an employer for specific applicants should be made in writing or, if made orally, shall be confirmed promptly by the employer in writing.

C. The Local Union shall record all employer requests for laborers, the date and time of the request, the name of the dispatcher, the name of the employer, the location of the job, and the start date of the job.

D. An applicant shall not be referred to an employer if the applicant was previously discharged for cause by the same employer.

**6. Dissemination of the Referral Rules**

All Guidelines and referral policies must be in writing. These Guidelines and all Local Union referral rules and policies must be posted conspicuously in the office and hiring hall of each Local Union, where they are available for review at all times in which the Local Union is open.

*continued on Page 26*

Luskin Declaration
Attachment A

# REPORT of the GEB Attorney

Additional copies of these rules and all Local Union referral rules shall be made available to members upon request, subject to the payment of reasonable copying costs. New members shall receive a free copy of the job referral rules upon admission to membership.

### 7. Job Referral Records

A Local Union shall maintain accurate and current records of all job referrals. The records shall be preserved for a period of three (3) years from the making of each record. The records shall include the following information:

A. Under telephone referral systems where the Local Union calls the applicant, the Local Union must record all referral attempts, including the date and time of the call(s), the name of the person making the call(s), and the outcome of the call.

B. Under telephone bid systems, the Local Union must record every bid received, including the name of the applicant, the time of his or her call, the name of the office employee who took the call, and the job the applicant was bidding for.

C. Under in-person referral systems, the Local Union must record the attendance of every applicant and the outcome of each attempted referral made by the Local Union or bid for referral made by the applicant.

D. Under all referral systems, the Local Union must also record:
  i. All registration by applicants of their availability for referral, including the date of each applicant's registration;
  ii. A current out-of-work list, including all applicants whose registrations of availability for referral are then in effect, listing the date of each applicant's registration, and organized according to seniority.
  iii. All requests from employers for workers, including the date of each request, the name of the employer, the location of the job site, the length of the job (if known), and any request by the employer for applicants with special skills, licenses, or certifications, or a specific applicant pursuant to 4(B), above.
  iv. All job referrals made, including the name of the employer, the applicant referred, the date on which the applicant registered his or her availability for employment, the date of the referral, the location of the job site, the date the applicant was hired, and the date any employment terminated.

### 8. Access to Job Referral Information

A. The Local Union must promptly respond to any applicant's request for access to any record containing the job referral information described in §7, pertaining to periods during which the applicant was registered for referral. Access to records includes the right to photocopy or take notes from all referral documents. Local Unions may adopt rules that restrict access to Social Security Numbers and, where there is a concern that such information may be misused in a manner contrary to the interests of the local union, members' telephone numbers. In all cases, however, applicants must be provided sufficient information to determine the identity of all individuals registered, contacted, or dispatched for employment.

An appointment for inspection shall be scheduled for within five (5) days of request. Copies shall be provided promptly, subject to reasonable copying costs.

B. Lists containing the information described in §7D(i) and 7D(ii) shall be conspicuously posted, or otherwise immediately available for inspection, at the offices of a Local Union on a weekly basis, so that the previous week is posted or immediately available by the close of business on the following Monday. The information shall remain posted or immediately available for at least two weeks.

### 9. Alleged Violations of Hiring Hall Guidelines

Any complaints or concerns regarding alleged violations of hiring hall procedures should be directed to the GEB Attorney's Office, at (202) 457-6198. Alleged violations of LIUNA's Code of Ethics should be promptly addressed to Inspector General W. Douglas Gow, (202) 942-2360.

### New Hiring Hall Guidelines Q&A

**What's new about the new Hiring Hall Guidelines?**

Before, under the Amended Job Referral Rules, each Local Union had to comply with a detailed set of rules governing all aspects of the operation of their hiring hall. Recognizing that one size does not fit all, the Amended Job Referral Rules contemplated changes from the rules, but only if the local first submitted a request for a Variance approved by the GEB Attorney or if a term of an applicable collective bargaining agreement expressly conflicted with the Amended Rules. The new Guidelines simplify the process and furnish far more latitude (and responsibility) to each Local Union. Locals are free to adopt any rules approved by the membership at two consecutive meetings, so long as the rules they adopt comply with the basic principles of fair referral set forth in the Guidelines. The Guidelines are intended to give members the discretion to adopt rules that are right for them, as long as they are fair, uniformly applied, and carefully documented.

**When will these new Hiring Hall Guidelines take effect?**

These Guidelines are effective immediately. If a Local Union is not satisfied with their current hiring hall rules, they may make any changes to their existing rules that comply with the Guidelines. However, before these new rules can go into effect, they must be approved by a vote of the membership at two consecutive meetings and reviewed by the GEB Attorney for consistency with the Guidelines.

**What if we are happy with our current hiring hall rules?**

If a Local Union is satisfied with the Amended Job Referral Rules, as established on September 1, 1996, and any variances or conflicts that have been approved by the GEB Attorney, then they should continue operating under these rules, and no action is required.

**How do we go about changing our rules?**

If a Local Union is interested in changing their referral rules, that local is encouraged to draft new hiring hall rules designed to suit the needs of their particular hiring hall. These new rules must be approved by a vote of the membership at two consecutive meetings, and reviewed by the GEB Attorney for consistency with the Guidelines, before they go into effect at the Local Union.

Any new rules must comply with the basic principles of fair referral set out in the Guidelines. Local Unions will still be required to notify all applicants of all rules, policies and criteria for referral, in writing; refer applicants in order, based on objective criteria; apply all rules consistently and uniformly; maintain detailed referral records; and allow applicants access to those records. The new referral rules must reflect these basic requirements.

**When do we have to make changes to our rules?**

If, after you have reviewed the new Hiring Hall Guidelines, you decide that you would like to set up new referral rules for your particular local, you may do so at any time by following the procedures described above.

*continued on page 27*

# REPORT of the GEB Attorney

We continue to receive frequent complaints from union members and requests for advice from local union officers about members' right of access to union records. A reasonable right of access to union records arises from federal law and from provisions of the LIUNA Constitution and policies promulgated by the General Executive Board. The LIUNA Ethical Practices Code guarantees the right of every member "to participate in the democratic decisions of the Union," and, as to financial matters, "to be reasonably informed as to how Union funds are invested or used." Similarly, the Hiring Hall Guidelines require that every Local Union promptly provide access and the right to photocopy all referral records pertaining to periods during which the applicant was registered for referral. Finally, federal law requires that Local Unions make available, on request, copies of certain documents required to be filed with the government.

The following outline is a guide only and is not intended to outline all of the matters that members may or may not review. Questions should be addressed to the Office of the GEB Attorney:

**LIUNA Constitution and Ethics and Disciplinary Procedure** Member should, upon request, be furnished with copies of the LIUNA Constitutions and the "Blue Book" containing the LIUNA Ethical Practices Code, Ethics and Disciplinary Procedure, and other related rules and policies.

**Collective Bargaining Agreements** Federal law requires that, upon request, members be furnished with copies of all collective bargaining agreements in force.

**Federal Filings** Members are entitled to review and to copy a Local Union's LM-2 and Form 990, and to review, upon reasonable request, back up documents used to prepare these federal filings, including any financial statements.

**Financial Information** In addition to the information supporting the LM-2 and Form 990, members are permitted to review and to copy the monthly written financial report of the Local Union Secretary-Treasurer, prepared in accordance with Article IV, Section 4(D)(4) of the Uniform Local Union Constitution. Other financial information may be made available upon reasonable request; provided, however, that Local Union officers may conclude that the disclosure of certain financial information – ongoing negotiations with service providers or for the purchase of property – may be sensitive, and that disclosure of such information may be contrary to the interests of the Local Union.

**Job Referral Information** Local Unions must respond promptly to any request to review job referral information and schedule such a review within five days of a request. Members are entitled to photocopy (subject to reasonable copying costs) and take notes from all referral documents pertaining to periods during which a Member was registered for referral. Local Unions may adopt rules that restrict access to Social Security numbers and, where there is concern that such information may be misused in a manner contrary to the interests of the Local Union, the Local Union may also restrict access to telephone numbers. A concern that a Member may use job referral information as an issue in a campaign for Local Union office is not a sufficient basis to restrict access; and in all cases, Members must be provided sufficient information to determine the identity of all persons registered, contacted, or dispatched for employment.

## Local Union 783, San Bernardino, California

On May 8, 2001, the IHO issued an Order and Memorandum confirming that the Emergency Supervision imposed by General President Terence O'Sullivan upon Local Union 783 on April 19, 2001 should continue.

As previously reported, on April 16, 2001, the LIUNA Appellate Officer affirmed the disciplinary penalty imposed by the Independent Hearing Officer against Local 783 Business Manager Jerry Rivera, Recording Secretary and District Council Delegate Jerry Lee Savage, and Vice President Ernest Angel for conduct related to the operation of the Local's hiring hall. As a result of this ruling, Rivera, Savage and Angel were removed from office and three vacancies were created on the Local 783 Executive Board. Subsequently, on April 19, 2001, Local Union 783 was notified that an Emergency Supervision was being imposed upon Local 783 to protect the organization as an institution and to carry out the legitimate objects of the organization. Through the terms of this Supervision, General President O'Sullivan appointed Rocco Davis as Supervisor and Charles Montgomery as Deputy Supervisor.

After a hearing on the subject on May 2, 2001, the IHO ruled that there is a need for this Supervision to continue "to protect the local union as an institution, to ensure the survival of Local 783, and to ensure that the legitimate objectives of a LIUNA local are carried out."

## John Sorrentino Jr. – Local Union 20, New York, New York

On November 7, 2000, the GEB Attorney filed disciplinary charges against John Sorrentino Jr., a member of Local 20 in New York, New York. The charges against Sorrentino Jr. allege that he committed barred conduct under the LIUNA Ethics and Disciplinary Procedure by being a member of the Luchese Family of La Cosa Nostra and by knowingly associating with members of organized crime. In addition, Sorrentino Jr. was also charged with obstruction of the GEB Attorney for his failure to appear at a scheduled deposition.

A hearing was held in the matter on February 14, 2001; although he received proper notice of the proceedings, Sorrentino Jr. did not appear and was not represented by counsel. On May 11, 2001, the Independent Hearing Officer (IHO) ruled that the GEB Attorney had not proven that Sorrentino Jr. was a member of the Luchese organized crime family or that he had knowingly associated with other LCN members. However, the IHO did find that Sorrentino Jr. knowingly obstructed the GEB Attorney by failing to appear for his scheduled deposition. As a result of these findings, the IHO permanently revoked Sorrentino Jr.'s membership in LIUNA.

## Ramon Duran – Local Union 270, Santa Ana, California

On September 29, 2000, the GEB Attorney filed disciplinary charges against Ramon Duran, the Secretary-Treasurer of Local Union 270 from 1993 to 1999. Duran was charged with violating the LIUNA Uniform Local Union Constitution for failing to perform all responsibilities associated with his elected office when he did not appear at an arbitration panel on behalf of Local Union 270 in May 2000.

On May 30, 2001, the Independent Hearing Officer ruled that the GEB Attorney had not proven the charge against Duran by a preponderance of the evidence. The GEB Attorney appealed this decision and a hearing has been scheduled for July 19, 2001.

## John B. Lazzaretto – Local Union 152, Highland Park, Illinois

On July 2, 2001, John B. Lazzaretto, employed as a custodian for Local Union 152, voluntarily entered into a Settlement Agreement with the GEB Attorney resolving any prospective disciplinary charges against him arising from the misuse of Local Union 152 funds in the early 1980's. Under the terms of the agreement, Lazzaretto has permanently resigned his employment with Local Union 152 and has agreed not to seek reinstatement as an officer or employee of LIUNA or any LIUNA-related entity. Lazzaretto was permitted to retain his LIUNA membership.

## TRUSTEESHIP

### Local Union 1001, Chicago, Illinois

On September 25, 2003, the GEB Attorney filed a complaint for trusteeship against Local 1001 in Chicago, Illinois. An investigation of Local 1001 by the Inspector General's Office revealed that a trusteeship was necessary to eradicate corruption, restore financial integrity, restore democratic practices and carry out the legitimate objectives of the union.

Local 1001, which represents employees of the City of Chicago, has long been dominated by La Cosa Nostra (the LCN). Bruno Caruso served in various offices within Local 1001 from 1984 until he was removed from his positions as Business Manager and President of the Local following a disciplinary hearing in 2001 that found that Bruno Caruso was an associate of organized crime. Local 1001 has not held a single contested election since at least 1972. During this period, the Local has also taken no effective steps to rid itself of organized crime corruption. In addition to a failure of democratic practices, Local 1001 has maintained a long-time practice of making improper pension, health and welfare contributions on behalf of certain unpaid officers. The GEB Attorney sought a trusteeship over Local 1001 to rid the Local of LCN influence; to restore democratic practices; to correct financial misconduct; to correct corruption; and to protect Local 1001 as an institution so that it may conduct its affairs in a manner that will enhance, conserve and protect the welfare and interest of the International Union, its affiliates and its members.

The Independent Hearing Officer held a hearing in the matter in Chicago, Illinois over several dates in November and December 2003 and issued a decision on March 2, 2004. According to the IHO, "[t]here is a preponderance of the evidence that Local 1001 continues to be infiltrated by organized crime. This is based upon the fact that the two Business Managers/Presidents, Ernest Kumerow and Bruno Caruso, who have held those offices from 1984 to 2001, have been recognized organized crime associates... The combination of the administration of these individuals and the Local's history of 30 years without one contested election presents a situation that the IHO has recognized cannot be ignored in the LIUNA reform process." Therefore, the IHO ruled that the trusteeship over Local 1001 should continue.

As a result of the trusteeship over Local 1001, the GEB Attorney has acquired evidence of possible disciplinary violations pertaining to breaches of fiduciary duties by the Executive Board and other unpaid officers of Local 1001. Although the investigation is continuing, to date, the GEB Attorney has entered into Settlement Agreements with the following former officers of Local 1001, all of whom have agreed permanently to resign their membership in Local 1001:

### James Capasso, Jr.

On June 10, 2004, the GEB Attorney and James Capasso, Jr., formerly an Auditor and member of the Executive Board, entered into a Settlement Agreement to resolve the investigation regarding his involvement in possible disciplinary violations at Local 1001. Under the terms of the Agreement, Capasso, Jr. agreed to resign permanently from LIUNA membership and from any positions or employment with LIUNA and any LIUNA-affiliated entity effective immediately.

### Sam DeChristopher

On June 14, 2004, the GEB Attorney and Sam DeChristopher, formerly Secretary Treasurer of Local 1001, entered into a Settlement Agreement to resolve the investigation regarding his involvement in this matter. Under the terms of the Agreement, which was effective immediately, DeChristopher has agreed to resign permanently from LIUNA membership and from any positions or employment with LIUNA and any LIUNA-affiliated entity.

### Nicholas Gironda

On June 17, 2004, the GEB Attorney and Nicholas Gironda, formerly Business Manager of Local 1001, entered into a Settlement Agreement to resolve the investigation regarding his involvement in this matter. Under the terms of the Agreement, Gironda agreed to resign permanently all LIUNA membership effective immediately and to refrain from seeking office or employment with LIUNA or any entity affiliated with LIUNA.

### Floyd Grogan

On June 19, 2004, the GEB Attorney and Floyd Grogan, a member of the Executive Board, entered into a Settlement Agreement to resolve the investigation regarding his involvement in this matter. As a result of this Agreement, Grogan agreed to resign permanently from LIUNA membership and from any positions or employment with LIUNA and any LIUNA-affiliated entity.

### Michael Palermo

On June 23, 2004, the GEB Attorney and Michael Palermo, formerly Vice President of Local 1001, entered into a Settlement Agreement to resolve the investigation regarding his involvement in this matter. Under the terms of the Agreement, Palermo agreed to resign permanently from LIUNA membership and from any positions or employment with LIUNA and any LIUNA-affiliated entity effective immediately.

## MATTERS CHARGED

### Fred Clemenza, Jr.—
### Local 1175, Howard Beach, New York

On April 8, 2003 an emergency trusteeship was imposed upon Local 1175 based on evidence of financial and other misconduct at Local 1175, primarily in the form of alleged financial misconduct by Fred Clemenza. At the time of this trusteeship, Clemenza served as the Business Manager of the Local, as well as a trustee on the Local 1175 Welfare, Pension, and Annuity Funds and the Administrator of the Local 1175 Welfare Fund. As a result of the trusteeship, Clemenza was removed from his position as Business Manager of Local 1175, as well as a trustee on the Local 1175 Welfare, Pension, and Annuity Funds.

After holding an emergency trusteeship hearing, the Independent Hearing Officer issued a decision in the matter on June 11, 2003 and found that "[t]here was extensive financial malpractice at Local 1175. This was evidenced by the improper use of credit cards, improper transfer of union funds

*(continued on next page)*



to the personal account of Clemenza, the President/Business Manager, excessive charges, and charges with inadequate back-up."

On November 25, 2003, the GEB Attorney filed disciplinary charges against Fred Clemenza, Jr. The charges against Clemenza included breach of fiduciary duty with respect to union and trust fund assets. Clemenza was also charged with embezzlement of funds belonging to Local 1175 and the Local 1175 Welfare fund, as well as with multiple barred conduct charges for obstruction of the Inspector General, the Independent Hearing Officer and the GEB Attorney.

After holding a hearing in the matter in New York, New York on February 24-25, 2004 and May 24, 2004, the IHO issued a ruling on June 23, 2004, and found that the GEB had proven 12 of the 13 charges against Clemenza by a preponderance of the evidence. According to the IHO, "[t]his record presents a disturbing pattern of conduct that is reminiscent of the abuses that lead to the passage of the Labor Management Reporting and Disclosure Act in 1969...It is clear that Clemenza and the Executive Board sought to use the Welfare Funds for Clemenza's expenses, hoping that Clemenza's conduct would fall outside the jurisdiction of the EDP. Let it be clear that such course of conduct will not succeed."

In light of these findings, the IHO has permanently revoked Clemenza's LIUNA membership and ordered him to pay $12,952.41 in restitution to the Welfare Fund plus interest on all funds he improperly converted from this fund, as well as $1,928.33 in restitution to the Pension Fund Holding Corporation and interest on all funds he improperly converted from the Pension Fund.

### Local Union 177, Des Moines, Iowa
### Fred T. Risius

As previously reported, on July 25, 2002, Fred Risius pled guilty to embezzlement from a labor union in violation of 29 U.S.C. § 501 (c). As part of his plea, Risius admitted to embezzling $100,060.60 in Local 177 funds. Subsequently, Risius was sentenced to 15 months of incarceration and ordered to pay restitution in the amount of $100,060.60. On January 14, 2004, the GEB Attorney filed disciplinary charges against Risius including "barred conduct" for embezzling funds and converting to his own use the money or assets of LIUNA Local 177 and with criminal violation of federal labor law. Risius was also charged with breach of fiduciary duty, and with receiving "kickbacks" from businesses with which the union did business.

In order to resolve the pending charges, on April 27, 2004, Risius entered into a Settlement Agreement with the GEB Attorney and agreed to permanently resign his LIUNA membership effective immediately.

### Henry Jannenga

On July 25, 2002, Henry Jannenga pled guilty to embezzlement from a labor union in violation of 29 U.S.C. § 501 (c). As part of his plea, Jannenga admitted to embezzling $20,460.54 in Local Union 177 funds. Jannenga was later sentenced to 3 months of incarceration and to pay restitution in the amount of $22,500.54. Based on this conviction, the GEB Attorney filed disciplinary charges against Jannenga on January 14, 2004. The charges against Jannenga include "barred conduct" for embezzling local union 177 funds and criminal violation of federal labor law. Jannenga is also charged with breach of fiduciary duty and with receiving a "kickback" from a business with which the union did business.

After holding a hearing in the matter, the IHO issued his opinion on May 17, 2004 and found that the charges against Jannenga had been proven by a preponderance of the evidence. According to the IHO, "[t]he stipulated facts underlying Jannenga's guilty plea reveal that Respondent developed and implemented a scheme to convert Local 177 and Statewide Training Fund assets to his own personal use. This is precisely the type of conduct the IHO and Appellate Officer have consistently found warrant severe sanctions." As a result of these findings, Jannenga's LIUNA membership was permanently revoked and Jannenga has been permanently barred from holding office or being employed by Local Union 177 or any other LIUNA-related entity or fund.

### Norval Craig Michael

On November 13, 2002, Norval Craig Michael pled guilty to conspiracy to embezzle from a labor union in violation of 18 U.S.C. § 371 and 29 U.S.C. § 501 (c). Michael was sentenced to 2 months home confinement and ordered to pay restitution in the amount of $16,900. Subsequently, the GEB Attorney filed disciplinary charges against Michael on January 15, 2004. The charges include "barred conduct" for embezzling union funds by converting $16,900.00 of Local Union 177 funds to his own use. Michael was also charged with criminal violation of federal labor law and with breach of constitutional duty as a LIUNA member.

The IHO held a hearing in this matter on April 14, 2004. Despite receiving proper notification of the hearing, Michael did not appear and was not represented by counsel. On May 5, 2004, the IHO issued his decision in the matter and found that the GEB Attorney had proven the charges against Michael by a preponderance of the evidence. As a result, Michael's LIUNA membership was permanently revoked.

### Clyde Starkey

On January 16, 2003, Clyde Starkey pled guilty to conspiracy to embezzle from a labor union in violation of 18 U.S.C. § 371 and 29 U.S.C. § 501 (c). As a result of this conviction, Starkey was sentenced to 6 months of incarceration and to pay restitution in the amount of $28,905.00. Subsequently, the GEB Attorney filed disciplinary charges against Starkey based on this conviction. The charges included "barred conduct" for converting $28,905.00 in money or assets of LIUNA Local 177 to his own use, criminal violation of federal labor law for conspiring to embezzle from a labor union, and with breach of constitutional duties as a LIUNA member.

Rather than contest the pending charges, Starkey and the GEB Attorney entered into a Settlement Agreement on May 17, 2004. Under the terms of this Agreement, Starkey has agreed to resign his LIUNA membership effective immediately.

### Joleen Coughlon

As previously reported, Joleen Coughlon pled guilty to two counts of labor union embezzlement in violation of 29 U.S.C. § 501 (c) and one count of making a false entry in labor union records in violation of 29 U.S.C. § 439 (c). On January 16, 2004, the GEB Attorney filed disciplinary charges against Coughlon based on this conviction. The charges against Coughlon include "barred conduct" for embezzling union funds by converting at least $1,484.70 in money or assets of LIUNA Local 177 to her own use. Coughlon was also charged with violation

REPORT

### Frank Noviello—
### Local Union 79, New York, New York

Frank Noviello is a member of Local 79 in New York, New York and served as a member of the Executive Board and as President of the Local until he resigned in May 2004. On June 8, 2004, Noviello and the GEB Attorney entered into a Settlement Agreement in order to resolve an investigation of allegations that Noviello committed conduct that violated LIUNA's Constitution, Ethics and Disciplinary Procedure and Ethical Practices Code. Under the terms of the Agreement, Noviello has agreed to permanently resign from any position as an officer, trustee, board or committee member or employee, in or with LIUNA or any affiliated entity.

### Linda Chargois—
### Local Union 80, Houston, Texas

Linda Chargois, the former Office Secretary of Local 80, was indicted by the United States District Court in the Eastern District of Texas on January 9, 2002 and charged with 29 separate counts of embezzlement of labor union funds in violation of 29 U.S.C. § 501 (c) (Embezzlement) totaling $35,171.10. On August 22, 2002, Chargois pled guilty to Count 1 of the Indictment and was sentenced to pay $35,171.10 in restitution to LIUNA. In order to resolve potential disciplinary charges arising out of this matter, the GEB Attorney entered into a Settlement Agreement with Chargois on July 15, 2004. Under the terms of this Agreement, Chargois has agreed to a permanent ban on membership and employment with any LIUNA-affiliated entity effective immediately.

### David McAlister—
### Local Union 389, Norfolk, Virginia

On July 1, 2004, David McAlister and the GEB Attorney entered into a Settlement Agreement in order to resolve an investigation of allegations that McAlister committed conduct that violated LIUNA's Constitution, Ethics and Disciplinary Procedure and Ethical Practices Code while he served as the Director of Training for the Virginia/North Carolina Laborers' District Council. Under the terms of this Agreement, McAlister has agreed to a permanent ban on holding any position as an officer, trustee, board or committee member, and to a permanent ban on holding any employment that requires him to possess, to be reimbursed from, to spend, or to direct the expenditure of LIUNA funds. Also, under the terms of this Agreement, McAlister will be subject to a one-year ban on holding any other employment with LIUNA or a LIUNA-affiliated entity which will begin on August 1, 2004.

### David Valenzuela—
### Local Union 585, Ventura, California

On May 4, 2004, the GEB Attorney and David Valenzuela entered into a Settlement Agreement to resolve an investigation into allegations that one or more individuals at Local 585 may have committed conduct that violated LIUNA's Constitution, Ethics and Disciplinary Procedure and Ethical Practices Code. Under the terms of this Agreement, Valenzuela has agreed to a three-year ban on seeking or holding any position as an officer, trustee, board or committee member in or with any LIUNA-affiliated entity. This three-year ban will begin at the date of the next scheduled election of officers at Local 585. Valenzuela will be permitted to remain a member in good standing.

### Joseph Rocha—
### Local Union 1082, El Monte, California

On February 10, 2004, the GEB Attorney and Joseph Rocha entered into a Settlement Agreement in order to resolve an investigation of allegations of financial malfeasance that occurred while Joseph Rocha served as the Business Manager/Secretary-Treasurer of Local 1082. Under the terms of this Agreement, Rocha agreed to resign permanently his membership with LIUNA Local Union 1082 and all other LIUNA-related entities or funds, effective immediately.

### Michael Urgola—
### Local Union 1153, Newark, New Jersey

In December 2001, Michael Urgola, the Business Manager of Local 1153, sent Vincent Urgola to a job at a union contractor, although Vincent Urgola was not on the out-of-work list and was not a member of the Local. In order to resolve potential disciplinary charges arising from this matter, the GEB Attorney and Michael Urgola entered into a Settlement Agreement on May 5, 2004. As a result of this Agreement, Urgola agreed to serve a two-week suspension without pay from his position as Business Manager of Local 1153 beginning May 10, 2004.

### Leslie Bell—
### Local Union 1184, Riverside, California

An investigation by the Inspector General's Office revealed that Leslie Bell embezzled $179,074.33 in Local 1184 funds while she served as the Bookkeeper of Local 1184 in violation of the LIUNA Constitution, Ethical Practices Code and federal law. On May 28, 2004, the GEB Attorney and Leslie Bell entered into a Settlement Agreement to resolve the investigation into this matter. Under the terms of the Agreement, Bell agreed to resign permanently from any positions or employment with LIUNA and any LIUNA-affiliated entity.

### Antonio Chaidez—Local Union 1655, North Riverside, Illinois

Antonio Chaidez served as Secretary-Treasurer of Local 1655 in North Riverside, Illinois from February 2002 through October 2003. An audit of Local 1655 that concluded in October 2003 revealed that Chaidez misappropriated $1,000 in Local 1655 funds by writing a Local 1655 check to himself for his personal use in violation of LIUNA's Constitution, Ethics and Disciplinary Procedure and Ethical Practices Code. In order to resolve the investigation into this matter, Chaidez and the GEB Attorney entered into a Settlement Agreement on April 28, 2004. Under the terms of this Agreement, Chaidez has agreed to a three-year suspension from any elected or appointed position as an officer, trustee, board member, employee or committee member, with any LIUNA-affiliated entity, regardless of whether such position is paid or unpaid. Chaidez will be permitted to retain his LIUNA membership during this suspension period, as long as he fulfills the terms and conditions of the Settlement Agreement and the duties and obligations of membership as outlined in the LIUNA Uniform Local Union Constitution.