884 F.Supp. 823, Mason Tenders Dist. Council of Greater New York v. Laborers' Intern. Union of **Page 1**
North America, (S.D.N.Y. 1995)

**\*823** 884 F.Supp. 823

149 L.R.R.M. (BNA) 2299

United States District Court,
S.D. New York.

**MASON TENDERS DISTRICT COUNCIL OF
GREATER NEW YORK, The
Executive Board of The Mason Tenders District
Council of Greater New York, and James
Lupo, Plaintiffs,
v.
LABORERS' INTERNATIONAL UNION OF
NORTH AMERICA, Defendant.**
No. 95 Civ. 0402 (RWS).
April 17, 1995.

District council and its elected officials moved for preliminary injunction preventing council's parent union from maintaining emergency trusteeship imposed on council by parent union under Labor Management Reporting and Disclosure Act (LMRDA). The District Court, Sweet, J., held that council was not entitled to preliminary injunction because council failed to show likelihood of success on the merits.

Motion denied.

### West Headnotes

[1] Injunction ☞138.1
  212 ----
    212IV Preliminary and Interlocutory Injunctions
      212IV(A) Grounds and Proceedings to Procure
        212IV(A)2 Grounds and Objections
  212k138.1 In General.
  Standard for granting preliminary injunction is a showing of irreparable injury and likelihood of success on the merits or sufficiently serious questions going to the merits to make them fair ground for litigation and balance of hardships tipping in favor of movant.

[2] Injunction ☞138.6
  212 ----
    212IV Preliminary and Interlocutory Injunctions
      212IV(A) Grounds and Proceedings to Procure
        212IV(A)2 Grounds and Objections
      212k138.6 Nature and Extent of Injury;
        Irreparable Injury.
  Irreparable injury requirement for preliminary

injunction is one that cannot be redressed through monetary award.

[3] Injunction ☞138.9
  212 ----
    212IV Preliminary and Interlocutory Injunctions
      212IV(A) Grounds and Proceedings to Procure
        212IV(A)2 Grounds and Objections
  212k138.9 Adequacy of Remedy at Law.
  Preliminary injunction will not issue where money damages are adequate compensation.

[4] Injunction ☞138.9
  212 ----
    212IV Preliminary and Interlocutory Injunctions
      212IV(A) Grounds and Proceedings to Procure
        212IV(A)2 Grounds and Objections
  212k138.9 Adequacy of Remedy at Law.
  Monetary loss will not suffice unless movant for preliminary injunction shows damage that cannot be rectified by financial compensation.

[5] Injunction ☞138.6
  212 ----
    212IV Preliminary and Interlocutory Injunctions
      212IV(A) Grounds and Proceedings to Procure
        212IV(A)2 Grounds and Objections
      212k138.6 Nature and Extent of Injury;
        Irreparable Injury.
  To obtain preliminary injunction, there must be showing that irreparable damages are likely, not merely possible.

[6] Labor Relations ☞148
  232A ----
    232AIII Labor Organizations
      232Ak141 Superior, Subordinate, and Federated
        Bodies
    232Ak148 Judicial Interference in General.
  Decision whether to grant preliminary injunctive relief enforcing labor union trusteeship under LMRDA is left to district court's discretion. Labor-Management Reporting and Disclosure Act of 1959, §§ 301-306, 29 U.S.C.A. §§ 461-466.

[7] Labor Relations ☞141.1
  232A ----
    232AIII Labor Organizations
      232Ak141 Superior, Subordinate, and Federated
        Bodies
    232Ak141.1 In General.
  Where parent union's constitution sets out

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

Luskin Declaration
Attachment D

884 F.Supp. 823, Mason Tenders Dist. Council of Greater New York v. Laborers' Intern. Union of    **Page 2**
North America, (S.D.N.Y. 1995)

provisions by which trusteeship can be imposed on emergency basis and it is shown that these provisions are complied with, trusteeship under LMRDA may not be invalidated unless party challenging it can make its showing of procedural deficiency, bad faith, or unauthorized purpose by clear and convincing evidence. Labor-Management Reporting and Disclosure Act of 1959, §§ 301-306, 29 U.S.C.A. §§ 461-466.

[8] Labor Relations ☞148
  232A ----
    232AIII Labor Organizations
      232Ak141 Superior, Subordinate, and Federated Bodies
    232Ak148 Judicial Interference in General.
  District council seeking preliminary injunction preventing its parent union from maintaining emergency trusteeship that parent union imposed on council under LMRDA had to show by preponderance of the evidence that parent union had no valid claim of right to impose trusteeship, a question hinging on whether parent union complied with its own constitutional provisions, and if council met this initial burden, then in order to complete its showing of the likelihood of success on the merits, council had to show bad faith or improper purpose by preponderance of the evidence; if council failed to make the first required showing, this would give rise to presumption that parent union's actions were valid and in order to defeat this presumption, council had to show, in order to satisfy second prong of test for injunctive relief, bad faith or improper purpose by clear and convincing evidence. Labor-Management Reporting and Disclosure Act of 1959, §§ 301-366, 29 U.S.C.A. §§ 461-466.

[9] Federal Civil Procedure ☞2462
  170A ----
    170AXVII Judgment
      170AXVII(C) Summary Judgment
        170AXVII(C)1 In General
    170Ak2462 Purpose.
  Summary judgment rule facilitates overall purpose of the Federal Rules of Civil Procedure, namely to secure just, speedy, and inexpensive determination of every action. Fed.Rules Civ.Proc.Rules 1, 56, 28 U.S.C.A.

[10] Federal Civil Procedure ☞2546
  170A ----
    170AXVII Judgment

      170AXVII(C) Summary Judgment
        170AXVII(C)3 Proceedings
          170Ak2542 Evidence
    170Ak2546 Weight and Sufficiency.
  If, when viewing evidence produced in light most favorable to nonmovant, rational trier could not find for nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

[11] Federal Civil Procedure ☞1041
  170A ----
    170AVII Pleadings and Motions
      170AVII(L) Judgment on the Pleadings
        170AVII(L)1 In General
    170Ak1041 In General.

[See headnote text below]

[11] Federal Civil Procedure ☞1771
  170A ----
    170AXI Dismissal
      170AXI(B) Involuntary Dismissal
        170AXI(B)3 Pleading, Defects In, in General
    170Ak1771 In General.
  Standard for determining whether to grant motion for judgment on the pleadings is the same as that governing motion to dismiss for failure to state claim. Fed.Rules Civ.Proc.Rule 12(b)(6), (c), 28 U.S.C.A.

[12] Federal Civil Procedure ☞1053.1
  170A ----
    170AVII Pleadings and Motions
      170AVII(L) Judgment on the Pleadings
        170AVII(L)1 In General
          170Ak1053 Determination of Motion
    170Ak1053.1 In General.

[See headnote text below]

[12] Federal Civil Procedure ☞1055
  170A ----
    170AVII Pleadings and Motions
      170AVII(L) Judgment on the Pleadings
        170AVII(L)1 In General
          170Ak1053 Determination of Motion
    170Ak1055 Matters Deemed Admitted.
  In deciding merits of motion for judgment on the pleadings, all material allegations composing factual predicate of the action are taken as true, for court's

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

884 F.Supp. 823, Mason Tenders Dist. Council of Greater New York v. Laborers' Intern. Union of    **Page 3**
North America, (S.D.N.Y. 1995)

task is to assess legal feasibility of complaint, not assay weight of the evidence which might be offered in support thereof. Fed.Rules Civ.Proc.Rule 12(c), 28 U.S.C.A.

[13] Federal Civil Procedure ⬳1049.1
170A ----
    170AVII Pleadings and Motions
        170AVII(L) Judgment on the Pleadings
            170AVII(L)1 In General
                170Ak1049 Insufficiency of Claim or Defense
170Ak1049.1 In General.
    Unless it is beyond doubt that plaintiff can prove no set of facts in support of her claim which would warrant relief, motion for judgment on the pleadings must be denied. **\*823**    Fed.Rules Civ.Proc.Rule 12(c), 28 U.S.C.A.

[14] Labor Relations ⬳82
232A ----
    232AIII Labor Organizations
        232Ak82 Statutory and Municipal Regulations in General.
    Fundamental right which LMRDA was enacted to protect is local union's right of self-determination. Labor-Management Reporting and Disclosure Act of 1959, § 2 et seq., 29 U.S.C.A. § 401 et seq.

[15] Labor Relations ⬳148
232A ----
    232AIII Labor Organizations
        232Ak141 Superior, Subordinate, and Federated Bodies
        232Ak148 Judicial Interference in General.

[See headnote text below]

[15] Labor Relations ⬳150
232A ----
    232AIII Labor Organizations
    232Ak150 Receivership.
    District council and its elected officials who were removed from office as result of imposition and continuation of emergency trusteeship imposed by its parent union under LMRDA established irreparable harm for purposes of preliminary injunction enjoining parent union from maintaining trusteeship that it imposed on council; trusteeship barred council officials from performing those duties which they were elected to perform, council's right of self-determination had been abridged by trusteeship and its reputation had been damaged by parent union's

actions, and council and its elected officials could not be compensated monetarily for these harms. Labor-Management Reporting and Disclosure Act of 1959, §§ 301-306, 29 U.S.C.A. §§ 461-466.

[16] Labor Relations ⬳150
232A ----
    232AIII Labor Organizations
    232Ak150 Receivership.
    Facts and circumstances of which parent union has been aware for substantial period of time cannot constitute basis for emergency trusteeship under LMRDA. Labor-Management Reporting and Disclosure Act of 1959, §§ 301-306, 29 U.S.C.A. § § 461-466.

[17] Labor Relations ⬳150
232A ----
    232AIII Labor Organizations
    232Ak150 Receivership.
    Although emergency trusteeship imposed by parent union on district council under LMRDA was not in accordance with parent union's constitution, this defect was cured by subsequent proceedings and thus, the presumption of validity required by LMRDA obtained during the second step, in which district council and its elected officials had to show by clear and convincing evidence that parent union and its president acted in bad faith or for improper purpose in imposing trusteeship for purposes of obtaining preliminary injunction preventing parent union from maintaining trusteeship. Labor-Management Reporting and Disclosure Act of 1959, §§ 301-306, 29 U.S.C.A. §§ 461-466.

[18] Labor Relations ⬳150
232A ----
    232AIII Labor Organizations
    232Ak150 Receivership.
    One legally permissible purpose is all that is required for valid trusteeship under LMRDA. Labor-Management Reporting and Disclosure Act of 1959, §§ 301-306, 29 U.S.C.A. §§ 461-466.

[19] Labor Relations ⬳148
232A ----
    232AIII Labor Organizations
        232Ak141 Superior, Subordinate, and Federated Bodies
        232Ak148 Judicial Interference in General.

[See headnote text below]

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

884 F.Supp. 823, Mason Tenders Dist. Council of Greater New York v. Laborers' Intern. Union of **Page 4**
North America, (S.D.N.Y. 1995)

[19] Labor Relations ⊕➞150
 232A ----
  232AIII Labor Organizations
  232Ak150 Receivership.
 District council and its elected officials failed to show by clear and convincing evidence that parent union and its president acted to maintain emergency trusteeship imposed by parent union on district council under LMRDA in bad faith or for unauthorized purpose so as to obtain preliminary injunction preventing parent union from maintaining trusteeship. Labor-Management Reporting and Disclosure Act of 1959, §§ 301-306, 29 U.S.C.A. § § 461-466.

[20] Federal Civil Procedure ⊕➞2497.1
 170A ----
  170AXVII Judgment
   170AXVII(C) Summary Judgment
    170AXVII(C)2 Particular Cases
     170Ak2497 Employees and Employment Discrimination, Actions Involving
  170Ak2497.1 In General.
 Material issue of fact as to whether district council and its elected officials were entitled to compensation for damages suffered, if any, arising between time of improper emergency imposition of trusteeship by parent union upon district council under LMRDA and the subsequent curative hearing and vote precluded summary judgment for parent union. Labor-Management Reporting and Disclosure Act of 1959, §§ 301-306, 29 U.S.C.A. § § 461-466.

[21] Judgment ⊕➞540
 228 ----
  228XIII Merger and Bar of Causes of Action and Defenses
   228XIII(A) Judgments Operative as Bar
   228k540 Nature and Requisites of Former Recovery as Bar in General.
 Doctrine of res judicata bars relitigation of the same claims between the same parties after matter has once been resolved by court of competent jurisdiction.

[22] Judgment ⊕➞713(2)
 228 ----
  228XIV Conclusiveness of Adjudication
   228XIV(C) Matters Concluded
    228k713 Scope and Extent of Estoppel in General

228k713(2) Matters Which Might Have Been Litigated.
 Res judicata precludes litigation of all claims that could have been raised in earlier proceeding whether or not they were actually raised and litigated.

[23] Judgment ⊕➞713(1)
 228 ----
  228XIV Conclusiveness of Adjudication
   228XIV(C) Matters Concluded
    228k713 Scope and Extent of Estoppel in General
  228k713(1) In General.
 Prerequisite to application of the doctrine of res judicata is that party against whom doctrine is sought to be applied must have been provided with fair and full opportunity in the prior proceeding to litigate claim sought to be precluded.

[24] Judgment ⊕➞651
 228 ----
  228XIV Conclusiveness of Adjudication
   228XIV(A) Judgments Conclusive in General
   228k651 Judgment by Confession or on Consent or Offer.
 Clause in consent decree executed in civil RICO action stating that the foregoing recitals are incorporated by reference and as so incorporated are agreed to by the government and district council did not mean that district council consented to imposition of emergency trusteeship so as to preclude, under the doctrine of res judicata, relitigation of validity of imposition of trusteeship on district council by parent union under LMRDA; that the recitals in the consent decree were "agreed to" could merely constitute agreement that the events recited actually happened. 18 U.S.C.A. § 1961 et seq.; Labor-Management Reporting and Disclosure Act of 1959, §§ 301-306, 29 U.S.C.A. §§ 461-466.

[25] Judgment ⊕➞651
 228 ----
  228XIV Conclusiveness of Adjudication
   228XIV(A) Judgments Conclusive in General
    228k651 Judgment by Confession or on Consent or Offer.

[See headnote text below]

[25] Judgment ⊕➞713(2)
 228 ----
  228XIV Conclusiveness of Adjudication

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

228XIV(C) Matters Concluded
  228k713 Scope and Extent of Estoppel in General
    228k713(2) Matters Which Might Have Been Litigated.

Policy of judicial economy supports idea that if trial or dispositive motion practice took place in prior action, party may be held responsible, ex post, for those issues which it could have litigated but did not; however, judicial economy does not support claim preclusion when prior proceedings have gone no further than resolution of some issues by consent of some parties and system's expenditure of time and resources has been substantially less than in case of trial or dispositive motion practice.

**\*825** Curtis, Mallet-Prevost, Colt & Mosle, New York City (Peter Fleming, Jr., of counsel), for plaintiff Mason Tenders Dist. Council and Executive Bd. of Mason Tenders.

Dominic F. Amorosa, New York City, for plaintiff James Lupo.

Comey, Boyd & Luskin, Washington, DC (Robert D. Luskin, David R. Boyd, of counsel), Laborers' Intern. Union of North America, Washington, DC (Laurence E. Gold, of counsel), Meyer, Suozzi, English & Klein, Mineola, NY (Lowell Peterson, of counsel), for defendant.

### OPINION

SWEET, District Judge.

Plaintiffs Mason Tenders District Council of Greater New York (the "District Council"), James Lupo, former president of the District Council ("Lupo") and the members of the Executive Board of the District Council, have moved by order to show cause for a preliminary injunction pursuant to Rule 65, Fed.R.Civ.P., preventing defendant Laborers' International Union of North America ("LIUNA"), **\*826** the District Council's parent union, from: (a) maintaining a trusteeship imposed on the District Council by the parent union in November of 1994; (b) implementing the provisions of a certain consent decree (the "Consent Decree") entered into on December 27, 1994 on behalf of the District Council by the trustee in December of 1994 in the case of *United States v. Mason Tenders District Council of Greater New York*, 94 Civ. 6487

(RWS), 1994 WL 742637; and (iii) causing the assets of the District Council to be used to fund the activities of a monitor and investigative officer required by the terms of the Consent Decree. Defendant has moved for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P., on grounds that plaintiffs action is barred by the doctrine of *res judicata*, and pursuant to Rule 56, Fed.R.Civ.P., for summary judgment on all of plaintiffs claims. For the reasons set forth below, all of these motions are denied.

### Parties

The District Council, which represents and controls twelve local labor unions in the greater New York region (the "Local Unions"), is headquartered in New York City. The other plaintiffs listed below claim to bring this action on behalf of the District Council as well as on their own behalf; defendant contests their standing to sue on behalf of the District Council although no motion was ever advanced nor relief requested specifically with respect to standing. Lupo was President of the District Council from November 1992 until the imposition of the trusteeship. He is also a union Delegate, representing one of the Local Unions. The remaining plaintiffs are individuals who were the members of the Executive Board of the District Council prior to the imposition of the trusteeship. The Executive Board of the District Council, as an entity, is also a plaintiff.

Defendant Laborers' International Union of North America ("LIUNA"), is a national labor organization headquartered in Washington, D.C., that oversees the operations of various local unions and district councils, including the Local Unions and District Council.

### Prior Proceedings

Plaintiffs filed their complaint in the action on January 19, 1995 and the case was assigned to this Court based on its relation to *United States v. Mason Tenders District Council*, 94 Civ. 6487, 1994 WL 742637 (the "Civil RICO Action") which action is presently *sub judice* before this Court upon the certification of the Attorney General pursuant to 18 U.S.C. § 1966.

Plaintiffs brought on the instant motion for

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

884 F.Supp. 823, Mason Tenders Dist. Council of Greater New York v. Laborers' Intern. Union of    Page 6
North America, (S.D.N.Y. 1995)

preliminary injunction by Order to Show Cause filed January 30, 1995. LIUNA filed its Answer on February 8, 1995 and also moved on that date by notice of motion for judgment on the pleadings on the theory that plaintiffs claims were precluded by the results of proceedings in the Civil RICO Action. LIUNA filed opposition papers to the preliminary injunction motion on February 8, 1995 and the hearing on the preliminary injunction was scheduled. LIUNA filed its summary judgment motion on February 10, 1995. Argument on the motions for judgment on the pleadings and summary judgment was heard on February 15, 1995. An evidentiary hearing on the motion for a preliminary injunction was conducted on February 27, 1995. Final submissions were made and argument was heard on March 23, 1995 at which time all motions were considered fully submitted.

## Facts

The District Council is an elected body composed of thirty-nine delegates elected by and representing the Local Unions. The members of the Local Unions perform a wide variety of laborers' jobs, including general labor, bricklaying, masonry and asbestos removal. The District Council engages in collective bargaining with employers on behalf of the members of the Local Unions. The District Council also manages pension and health insurance funds for the members. As of the end of 1993 these funds included a pension fund of approximately $180 million; an annuity fund of approximately $71 million; a welfare fund of $21 million; and a legal services fund of approximately $2 million.

LIUNA is the District Council's parent organization. Parent organizations like LIUNA are empowered by the Labor-Management **\*827** Reporting and Disclosure Act ("LMRDA") to impose trusteeships like the one at issue here. *See* 29 U.S.C. §§ 461-66. LMRDA also establishes certain requirements as to the imposition of such trusteeships. The procedural requirements for imposition of a trusteeship such as that in here in question are set out in the constitution of LIUNA.

From 1989 to 1992 Frank Lupo, then the President of the District Council, participated in real estate frauds benefitting him and his co-conspirators and causing the Trust Funds to suffer monetary losses measured in the tens of millions. He resigned the

Presidency in November of 1992 and three months later pleaded guilty to criminal RICO charges. He was sentenced to four years imprisonment. Roger Levin, an attorney ("Levin"), also pleaded guilty to charges growing out of his involvement in those fraudulent transactions. Frank Lupo and Levin both ultimately cooperated with the Government in its investigation of the District Council.

In November of 1992 plaintiff Lupo was elected President of the District Council.

Between 1988 and 1990 LIUNA imposed trusteeships upon three of the local unions because of known criminal activities of elected officials and appointees of these locals.

From December 1993 to September 1994 Allan Taffet, Assistant United States Attorney in the Southern District of New York ("Taffet") held conversations and corresponded with David Elbaor, outside counsel to LIUNA ("Elbaor") (FN1) and its President, Arthur Coia ("Coia"), on a number of occasions inquiring whether and when LIUNA intended to impose a trusteeship on the District Council and indicating Taffet's sense that a trusteeship should be imposed in order to put an end to systemic corruption in the District Council and the Local Unions. All of the facts discussed above were known to Elbaor and Coia throughout the period from December 1993 to September 1994 and Coia knew of Taffet's repeated inquiries concerning LIUNA's imposition of trusteeship on the District Council.

The Government filed its complaint in the Civil Rico Action (the "Civil RICO Complaint") on September 8, 1994. The Civil RICO Complaint alleged *inter alia* that over a period of the last twenty years, executives and appointees of the District Council repeatedly extorted payoffs from employers in exchange for those officials' and appointees' condoning the employers' use of non-union labor and the employers' failure to make payments to the Trust Funds in accordance with collective bargaining agreements; embezzled and converted Trust Fund monies through fraudulent real estate transactions; engaged in kickback schemes with companies and individuals providing services to the District Council and the Local Unions; failed to police and knowingly condoned similar activities on the part of officials of some of the Local Unions.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

The Civil RICO Complaint also listed convictions and guilty pleas of numerous individuals charged with extortion of payoffs from employers of laborers represented by the District Council:

In March 1989, Basil Cervone was convicted of RICO conspiracy involving illegal labor payments and embezzlement committed while serving as Vice-President of the District Council.

In March 1989, Joseph Cervone was convicted of five counts of receipt of illegal labor payments and embezzlement committed while serving as president of one of the Local Unions.

In March 1989 Peter A. Vario was convicted of RICO conspiracy involving the receipt of illegal labor payments while serving as Business Manager of one of the Local Unions.

In September of 1989 Michael LaBarbara pleaded guilty to six counts of receiving illegal labor payments while serving as Business Manager of one of the Local Unions.

**\*828**  In September of 1989 James Abatiello pleaded guilty of four counts of receiving illegal labor payments while serving as Assistant Business Manager of one of the Local Unions.

In March 1990 Peter "Jocko" Vario (not the Peter A. Vario mentioned above) was convicted of one count of RICO conspiracy involving the receipt of illegal labor payments while President of one of the Local Unions.

In March of 1987, Louis Giardina was convicted of RICO conspiracy, aiding and abetting the receipt of illegal labor payments and obstruction of a criminal investigation while serving as Treasurer of the District Council and President of one of the Local Unions.

In November of 1990 Louis Casciano pleaded guilty to RICO conspiracy involving loansharking and receiving illegal labor payments while he was Field Representative of the Trust Funds and Assistant to the President of the District Council.

In November 1990 Albert Soussi pleaded guilty to RICO conspiracy involving loansharking and aiding and abetting Casciano's receipt of illegal labor payments while Soussi was a Field Representative of the Trust Funds.

In December of 1992 Carmine Mandragona pleaded guilty to RICO conspiracy involving the receipt of illegal labor payments while serving as President of one of the Local Unions.

The Civil RICO Complaint sought the removal of the elected leaders of the District Council; control by the Government over the election of new officers; appointment of a special Investigations Officer with power to charge and prosecute union members suspected of wrongdoing; and appointment of a monitor to oversee the administration of the District Council and the management of the Trust Funds, the services of such monitor and Investigations Officer to be paid for out of the District Council's funds.

In September 1994, after the Civil RICO Complaint was filed Taffet renewed his inquiry with Elbaor as to when LIUNA was going to impose a trusteeship on the District Council. Coia knew of the Civil RICO Complaint and its filing, read it, and was again told in September of 1994 that Taffet wanted LIUNA to impose a trusteeship on the District Council.

On November 1, 1994, the Government filed a notice of motion in the Civil RICO Action seeking partial summary judgment and a preliminary injunction against the District Council (the "November 1 Motion"). Affidavits of Frank Lupo and Levin and other materials were filed by the Government in support of that motion.

On November 4, 1994, Paul Coffey, Chief of the Organized Crime and Racketeering Section of the United States Department of Justice ("Coffey") conveyed a copy of a draft civil RICO complaint (the "Draft Complaint") to LIUNA's outside counsel with his own cover letter. The Draft Complaint had been prepared by the office of the United States Attorney for the Northern District of Illinois. It alleged, *inter alia,* civil RICO violations on the part of LIUNA, its General Executive Board, Coia, Rollin Vinall, the General Secretary-Treasurer of LIUNA and other officials of the parent union. The Draft Complaint named Coia as a defendant in both his official and individual capacities and charged him with associating with known members of

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

884 F.Supp. 823, Mason Tenders Dist. Council of Greater New York v. Laborers' Intern. Union of    **Page 8**
North America, (S.D.N.Y. 1995)

organized crime, soliciting and receiving illegal payoffs, receiving kickbacks and violating the Hobbs Act. By the Draft Complaint the Government sought to take over LIUNA at the national level and to remove Coia from the Presidency.

Coia himself received the Draft Complaint on November 7. He sent out a notice calling an emergency meeting of LIUNA's General Executive Board that same day. There is no direct evidence of any discussions between the Government and Coia or his counsel connecting the Draft RICO Complaint presented to Coia by the Justice Department and the Civil RICO Complaint and November 1 Motion in this District. Nor is there any direct evidence linking the Draft RICO Complaint to the imposition of the trusteeship. The record compels the inference that avoidance of his own prosecution was at least one motive for Coia's decision to impose the trusteeship.

**\*829** The Constitution of LIUNA (the "LIUNA Constitution") sets forth the following authority and procedures for the imposition and maintenance of a trusteeship over a subordinate body such as the District Council:

When the General President finds, in his opinion, that action by him is necessary for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or otherwise carrying out the legitimate objects of such subordinate body of [LIUNA] ... he may ... appoint a temporary trustee ... to take charge and control of the affairs of such subordinate body; provided, however, that prior to the appointment of such trustee ... he shall cause to be issued a notice setting a time and place for hearing for the purpose of determining whether such temporary trustee ... shall be appointed, but provided further, however, that where in the judgment of the General President an emergency situation exists within the subordinate body, a temporary trustee ... may be appointed prior to such hearing, but such hearing shall then commence within 30 days and a decision made within 60 days after the appointment of such temporary trustee ... and further provided in all cases the subordinate body shall be advised of the reasons for the proposed or actual appointment of a trustee ... and that

adequate notice of a hearing thereon at least 10 days prior to the date of the hearing shall be given to the subordinate body involved. During the period of trusteeship, all the officers of the subordinate body are relieved of their particular trust.... The trustee ... shall be authorized to take full charge of the affairs of the subordinate body, to appoint temporary officers or employees at any time during the trusteeship ... and to take such other action as in the trustee's ... judgment is necessary for the preservation of the subordinate body and its interests. The trustee ... shall, from time to time, report on the affairs and transactions of the subordinate body to the General President.

Copies of the November 1 Motion and its accompanying affidavits were provided to LIUNA by the Government on November 8, 1995. This submission can best be described as "voluminous." The substance of the submission was discussed by Coia and Elbaor on November 8. On November 9, 1994, one day after LIUNA's receipt of the November 1 Motion and its accompanying affidavits, at the meeting that had been noticed on November 7, Coia proposed and the General Executive Board of LIUNA approved, as set forth above, the imposition of a temporary trusteeship over the District Council and the appointment of Elbaor as temporary trustee. The General Executive Board also authorized the hiring of counsel to represent Coia and LIUNA in matters relating to the Draft RICO Complaint. Coia announced the imposition of the trusteeship to the members and officers of the District Council by letter of November 14, 1994.

In a November 16 letter to Coia, Samuel J. Caivano ("Caivano") a Vice-President of LIUNA and manager for the New York/New Jersey region, objected to the potentially unflattering light that Coia's November 14 letter shed on Caivano and his own anti-corruption efforts. In responding to Caivano's assertions Coia said, in a letter to Caivano on that same date, that the "District Council is finished" and that one of the things "at stake" was "the fate of our International Union" (meaning LIUNA).

Despite the fact that the emergency trusteeship was actually imposed by a vote of the LIUNA General Executive Board, Coia asserted after the fact that the action was his alone, in accordance with the LIUNA

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

Constitution as set out above. Coia asserted that he took these actions because, in his own opinion, an "emergency situation", the meaning of which will be discussed below, existed. Coia's purported finding that an emergency existed was based on the content of affidavits and other materials filed by the Government in support of the November 1 Motion.

As set out above, the LIUNA Constitution provides that if the President of LIUNA imposes an emergency trusteeship, a fair hearing must be conducted within 30 days of imposition on the reasons for the trusteeship **\*830** and a decision rendered within 60 days of imposition as to whether the trusteeship was warranted and should remain in place.

Elbaor took control of the District Council on November 15, 1995, removing Lupo, the Executive Board and all the elected delegates from their respective offices in the District Council. He also dismissed the Trustees of the Trust Funds and appointed himself Chair of Trustees for the Trust Funds. On November 17 Elbaor dismissed Peter Fleming as attorney and his firm of Curtis, Mallet-Prevost, Colt & Mosle as counsel to the District Council in the Civil Rico Action, appointing himself as counsel to the District Council instead. On November 18 Elbaor informed this Court in the Civil RICO Action that he had reached a tentative agreement with the Government pursuant to which the District Council would consent to certain of the remedies sought by the Government in the Civil RICO Action in its motion for preliminary injunction. On December 27, 1994 Elbaor executed a consent decree on behalf of the District Council which was entered that same date, under which, *inter alia*, (i) a monitor was appointed with autonomous supervisory powers over the District Council; (ii) an investigations officer was appointed with authority to investigate and prosecute misconduct in the District Council and in conjunction with the monitor, to impose fines upon and/or suspend or expel union members, officers agents, representative and employees and to bring civil actions on behalf or the District Council to recover damages arising out of the wrongs alleged in the Civil RICO Complaint. The consent decree also provided that the compensation and expenses of the monitor and the investigations officer were to be paid from the funds of the District Council.

A hearing on the imposition of the trusteeship was convened on December 5, 1994 before a Special Hearing Panel comprised of Chuck Barnes ("Barnes") and George R. Gudger ("Gudger") (the "December 5 Hearing"). Both Barnes and Gudger are Vice-Presidents of LIUNA and members of its General Executive Board. They both participated in the November 9 vote in favor of the emergency imposition of the trusteeship. The purpose of the hearing was to prepare findings of fact after the presentation of evidence by the relevant parties and to make recommendations to the General Executive Board of LIUNA on the imposition and maintenance of the trusteeship. Elbaor appeared as trustee and also testified as to conditions at the District Council as he had observed them and facts which he had discovered since taking control of the District Council on November 15. Steve Hammon, Elbaor's Deputy Trustee ("Hammon"), and James S. Ray, an ERISA attorney employed by LIUNA ("Ray"), also testified.

The testimony of all three witnesses described the results of their investigations into the wrongs described by the Government in the Civil RICO Complaint and its accompanying documents. Also adduced at this hearing was evidence of financial and other malpractice which had been uncovered subsequent to the imposition of the trusteeship. This new evidence was summarized in the Findings and Recommendation (the "Findings") of the Special Hearing Panel, which were adopted by the General Executive Board on January 17, 1995 and published as an attachment to Rollin Vinall's letter of January 19, 1995 to David Elbaor. The Findings included the following new indications of wrongdoing and malfeasance:

(i) no attempt had been made by present trustees of the Trust Funds to recover from former trustees, lawyers, appraisers, accountants, sellers and middlemen any of the $40 million lost from the Trust Funds through the fraudulent activities of such individuals, described in the Civil RICO Complaint;

(ii) trustees of the Trust Funds had failed to obtain fidelity bonds for Trust Fund employees despite past embezzlement of over $400,000 by a past Trust Fund administrator;

(iii) the District Council's program for collection of millions of dollars in delinquent payments from

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

Case 1:06-mc-00006-JR    Document 5-6    Filed 02/02/2006    Page 10 of 17

884 F.Supp. 823, Mason Tenders Dist. Council of Greater New York v. Laborers' Intern. Union of    **Page 10**
North America, (S.D.N.Y. 1995)

employer/contractors was at that time functioning in an ineffective manner despite ongoing payments of substantial legal fees for collection services; and

(iv) the District Council had been levying a 25% per capita tax on union dues without such tax ever having been adopted in accordance *831 with the District Council's constitutionally mandated procedures.

These improprieties were uncovered after Elbaor took control of the District Council on November 15, and were not disclosed in the Civil Rico Complaint or in the November 1 Motion papers. The December 5 Hearing was the first occasion on which any member of the General Executive Board of LIUNA learned of these improprieties.

In addition to these new improprieties, the three witnesses repeated, and the Special Hearing Panel noted, the economic losses to the Trust Funds of approximately $40 million due to the alleged wrongdoing of District Council executives and employees, which was documented in the Civil RICO Complaint and the November 1 Motion papers. Affidavits which accompanied the November 1 Motion were presented to the Special Hearing Panel as evidence of the existence of the emergency situation. Counsel to Lupo objected to these as hearsay. Although it is uncontested that Coia's original finding that an emergency existed was based largely on two of those affidavits—those of Frank Lupo and Levin—neither of those affiants appeared at the hearing for sworn testimony and cross-examination.

On the date of the hearing Coia released a press statement heralding the hearing as part of an "alliance" and an "historic cooperative effort" between LIUNA and the United States Government. The press release also makes reference to LIUNA's "unprecedented effort to rid the Mason Tenders District Council ... of pervasive corruption."

On January 17, 1995, the General Executive Board of LIUNA voted to ratify the emergency imposition of the trusteeship and, separately, to authorize ongoing maintenance of the trusteeship. At the same time the General Executive Board adopted the Findings. The Special Hearings Panel noted in the Findings that the affidavits were, in fact, hearsay, but that they were admitted into the Panel's non-

judicial inquiry over counsel's objection because to exclude them would be "to substitute form for undeniable reality." The Findings also make note of the witnesses' testimony on additional discoveries of wrongdoing made by the witnesses after the imposition of trusteeship.

*Discussion*

**A. Legal Standards**

**1. Preliminary Injunction**

### (a) In General

[1] The standard for granting a preliminary injunction in this Circuit is a showing of (1) irreparable injury and (2) a likelihood of success on the merits or (a) sufficiently serious questions going to the merits to make them a fair ground for litigation and (b) the balance of hardships tipping in favor of the movant. *Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994); *Laureyssens v. Idea Group, Inc.,* 964 F.2d 131, 135-36 (2d Cir.1992); *SEC v. Unifund SAL,* 910 F.2d 1028, 1038 n. 7 (2d Cir.1990); *Citibank, N.A. v. Nyland (CF8) Ltd.,* 839 F.2d 93, 97 (2d Cir.1988).

[2][3][4][5] The Second Circuit considers the showing of irreparable harm to be "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 275 (2d Cir.1985) (quoting *Bell & Howell Mamiya Co. v. Masel Supply Corp.,* 719 F.2d 42, 45 (2d Cir.1983)). Irreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation, a preliminary injunction will not issue. *See JSG Trading Corp. v. Tray-Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir.1990). Monetary loss will not suffice unless the movant shows damage that cannot be rectified by financial compensation. *See Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir.1989). The law in this Circuit requires a showing that irreparable damages are likely, not merely possible. *JSG Trading Corp.,* 917 F.2d at 79; *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam).

### (b) Preliminary Injunction in the Context of Labor Union

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

884 F.Supp. 823, Mason Tenders Dist. Council of Greater New York v. Laborers' Intern. Union of         **Page 11**
North America, (S.D.N.Y. 1995)

### *Trusteeships*

Although the question presented by plaintiff's motion is whether to grant injunctive relief lifting, rather than imposing, trusteeship, **\*832** this Court is guided by those cases in which a trusteeship was sought to be imposed via injunction.

[6] The decision whether to grant preliminary injunctive relief enforcing a labor union trusteeship is left to the district court's discretion. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931-32, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975); *International Brotherhood of Boilermakers v. Local Lodge D129*, 910 F.2d 1056, 1059 (2d Cir.1990); *AMR Servs. Corp. v. International Brotherhood of Teamsters*, 821 F.2d 162, 163 (2d Cir.1987) (per curiam); *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 315 (2d Cir.1982).

[7] The Court of Appeals has set forth a detailed allocation of burdens when a preliminary injunction is sought in the context of a trusteeship imposed by a parent labor organization upon a local union. In a case in which the parent union sought injunctive relief the Second Circuit held that "[o]nce the parent organization demonstrates likelihood of success on the merits of its claim of right to impose the trusteeship and irreparable harm if it is not, then in light of [LMRDA's] provisions, the burden shifts to the local to show that the trusteeship was not imposed in accordance with the procedural requirements of the union constitution or that the parent organization acted without good faith or for a purpose not authorized by [LMRDA]." *International Brotherhood of Teamsters, et al. v. Local 810*, 19 F.3d 786, 792 (2d Cir.1994). Further, where, as here, a parent union's constitution sets out provisions by which a trusteeship can be imposed on an emergency basis, and it is shown that those provisions are complied with, the trusteeship may not be invalidated unless the party challenging it can make its showing of procedural deficiency, bad faith or unauthorized purpose by clear and convincing evidence. *Id.* at 791, *National Ass'n of Letter Carriers v. Sombrotto*, 449 F.2d 915, 920 (2d Cir.1971).

[8] Since, in the instant matter, a trusteeship has already been imposed, the allocation of burdens set out in *Local 810* must be adapted. Plaintiffs will be required to show by the preponderance standard that

LIUNA had no valid "claim of right" to impose the trusteeship (which question, as will be discussed below, hinges on whether LIUNA complied with its own constitutional provisions for emergency imposition). If plaintiffs meet their burden at this first step, then in order to complete their showing of the likelihood of success on the merits, they will be required, as a second step, to show bad faith or improper purpose by the preponderance of the evidence. Alternatively, if plaintiffs fail to make the required showing at the first step, this will give rise to presumption that LIUNA's actions were valid. In order to defeat this presumption, plaintiffs will be burdened to show at showing, then in order to satisfy the second prong of the test for injunctive relief they will be burdened to show bad faith and improper purpose by clear and convincing evidence. *See Local 810*, 19 F.3d at 791-92.

### 2. *Rule 56 Standards for Summary Judgment*

[9] The Rule 56 motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules as stated in Rule 1, namely, "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Silver v. City Univ. of New York*, 947 F.2d 1021, 1022 (2d Cir.1991).

[10] The Second Circuit has repeatedly noted that "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (citing *Celotex v. Catrett*, 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting) and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)); *see United* **\*833** *States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) To view preceding link please click here ; *Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York*, 716 F.2d

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

884 F.Supp. 823, Mason Tenders Dist. Council of Greater New York v. Laborers' Intern. Union of   **Page 12**
North America, (S.D.N.Y. 1995)

982, 983-84 (2d Cir.1983). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991).

### 3. *Judgment on the Pleadings*

[11][12][13] The standard for determining whether to grant a motion for judgment on the pleadings under Rule 12(c), Fed.R.Civ.P., is the same as that governing a motion to dismiss made under Rule 12(b)(6). *George C. Frey Ready-Mixed Concrete Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir.1977). In deciding the merits of the motion, all material allegations composing the factual predicate of the action are taken as true, for the court's task is to "assess the legal feasibility of the complaint, not assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774 (2d Cir.1984). Thus, unless it is beyond doubt that plaintiff can prove no set of facts in support of his or her claim which would warrant relief, the motion for judgment on the pleadings must be denied. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 250, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

These standards are now applied to instant motions.

### B. *The Preliminary Injunction is Denied*

#### 1. *Plaintiffs Have Established Irreparable Harm*

[14][15] As elected officials of the District Council removed from office as a result of the imposition and continuation of the trusteeship, the plaintiffs have established irreparable harm. The trusteeship bars the elected District Council members from performing those duties which they were elected to perform. A fundamental right which LMRDA was enacted to protect is a local union's right of self-determination. *See Regan v. Williams*, 122 L.R.R.M. 2441, 2443, 1986 WL 8413 (W.D.Pa.1986); *Smith v. Distillery Workers*, 75

L.R.R.M. 2049, 2052, 1970 WL 638 (E.D.Ky.1970). It has been held that damage to a labor union's reputation and image constitute irreparable injury. *See International Brotherhood of Teamsters v. Local 705*, 827 F.Supp. 513, 516 (N.D.Ill.1984). In the case at bar the District Council's right of self-determination has been abridged by the trusteeship and its reputation has been damaged by LIUNA's actions. The plaintiffs cannot be compensated monetarily for these harms. Thus, plaintiffs have met their burden of showing irreparable harm.

#### 2. *Success on the Merits*

##### (a) *The Trusteeship Was Not Imposed in Accordance With the LIUNA Constitution*

The first part of the inquiry on the probability of plaintiffs' success on the merits is a determination whether plaintiffs have shown, by the preponderance standard, that LIUNA failed to impose the emergency trusteeship in accordance with the LIUNA Constitution. Ordinarily, and in accordance with the law in this Circuit, if plaintiffs failed to meet this burden, they would then be burdened to show, by clear and convincing evidence, that Coia acted in bad faith or that the trusteeship was imposed for a purpose not authorized by LMRDA.

However, given the unique circumstances surrounding this particular trusteeship, this inquiry is necessarily comprised of an intermediate question between the first and second step: evaluation of LIUNA's contention that, if the emergency imposition of the trusteeship was procedurally deficient, that deficiency was cured by the internal fair hearing and the January 17 vote of the General Executive Board. If those subsequent proceedings cure the procedural defect in the emergency imposition, then the inquiry ends **\*834** and plaintiffs will have failed to meet their burden of showing success on the merits.

LIUNA did not adhere to the procedures set out in its own constitution. Under the LIUNA Constitution, emergency imposition is a matter for the President of LIUNA, not for the General Executive Board. As indicated in LMRDA, and as is implicit in the union's constitution, the proper role for an executive board of a parent union is that of

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

authorization and ratification of such action after a fair hearing. *See* 29 U.S.C. § 464(c). Effectively, the General Executive Board ratified Coia's opinion that an emergency existed and his decision to impose the trusteeship at the same time he announced his opinion and his decision to act upon it. He was authorized by the union's constitution to take this emergency action alone based on his unreviewed opinion. The review and approval of the General Executive Board was, per the union's constitution and the statute, to come only after due inquiry. There was no requirement for the General Executive Board to act at the time of the emergency imposition.

It might be argued that this was a harmless "belt and suspenders" approach, but that view ignores the totality of the facts. Two of the General Executive Board members who voted for the imposition of the trusteeship based only on Coia's representation of the facts--Gudger and Barnes--later constituted the Special Hearing Panel, whose duty it was to make findings of fact as to the basis for the emergency imposition of the trusteeship and for its maintenance.

Second, this record does not contain facts which could have constituted a reasonable basis for Coia's good faith belief that an emergency existed. In construing language in a union constitution almost identical to the relevant provision in LIUNA's Constitution, the Court of Appeals has explained that "[i]n order to comply with the procedural mandates of its constitution, the general president must have had a good faith belief that a situation within the local was developing *suddenly* and *unexpectedly* or through an unforeseen combination of circumstances ... and that the circumstances demanded immediate action." *Local 810,* 19 F.3d at 793 (emphasis added). In his deposition Coia conceded that there was no sudden or unexpectedly developing situation present within the District Council at the time the emergency trusteeship was imposed. LIUNA argues that it was Coia's *learning* of the facts of the corruption that was sudden and unexpected and that this is what constituted the emergency. Such an interpretation constitutes a semantic evasion of the Second Circuit's clear directive.

[16] The only significant development of an emergent nature was the fact of the Government's

November 1 Motion, and a need to conserve union assets by consenting to that Motion. Those considerations were not relied upon as a basis for the imposition of the trusteeship. Coia and LIUNA assert that the Government's "massive evidentiary submission" accompanying the November 1 Motion gave Coia the basis for his opinion that an emergency existed. However, the great majority of the information contained in that evidentiary submission was already known to Coia and LIUNA and might well have been presumed by the Government's filing of its Civil RICO Complaint. Facts and circumstances of which a parent union has been aware for a substantial period of time cannot constitute a basis for an emergency trusteeship. *See Retail, Wholesale, Department Store Union, et al. v. National Union of Hospital and Health Care Workers, et al.,* 577 F.Supp. 29, 33 (S.D.N.Y.1984) (Sand, J.). The only new information contained in the November 1 Motion papers were affidavits by Frank Lupo and Levin, confirming allegations already known to Coia and LIUNA.

### (b) *The Defect was Cured by Subsequent Proceedings*

Since the trusteeship was imposed in violation of proper procedural requirements and in the absence of facts sufficient to constitute a basis for a "good faith" belief on Coia's part that an emergency existed, it remains to be determined whether, as defendant contends, such deficiencies could have been, and were, cured by subsequent internal union proceedings.

**\*835** There is no case in this Circuit which provides direct guidance on this point. The Court of Appeals has held that, in the context of*disciplinary* proceedings by a union against a member, subsequent *de novo* proceedings can satisfy a procedural "fair hearing" requirement despite a prior defect in process. *See Rosario v. Amalgamated Ladies' Garment Cutters' Local 10,* 605 F.2d 1228, 1244-45 (2d Cir.1979) (noting that such a result leaves open the question of damages plaintiff may have suffered between the outcome of the defective proceeding and the curative *de novo* one), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980). Other courts have considered evidence available to a parent union at the time of emergency imposition, as this Court has

884 F.Supp. 823, Mason Tenders Dist. Council of Greater New York v. Laborers' Intern. Union of North America, (S.D.N.Y. 1995)

**Page 14**

done, and then gone on to examine the totality of evidence available at a later, internal hearing, on the continuation of the trusteeship, treating the two as separate and discreet inquiries. *See Markham v. International Association of Iron Workers,* 901 F.2d 1022, 1024-26 (11th Cir.1990); *C.A.P.E. Local 1983 v. I.B.P.A.T.,* 598 F.Supp. 1056, 1071-73 (D.N.J.1984).

It has been said that the underlying goal of LMRDA is the elimination of criminal influence and corruption from labor unions. *See International Brotherhood of Teamsters v. Local 810,* 19 F.3d 786, 790, 792. Given that goal, it would seem that the approach taken in *Markham* and *C.A.P.E.* is appropriate here given the difficulties and contingencies inherent in the process of uncovering criminal influence and corruption in organized labor. Internal union proceedings, unlike criminal prosecutions, do not jeopardize those fundamental liberty interests so jealously guarded by our Fourth Amendment. If, as a by-product of an improperly imposed emergency trusteeship additional and compelling evidence of corruption comes to light, it would be imprudent for a court to intrude on the further action taken by a parent union based on this additional information in combination with that information which formed the original basis for the imposition of the trusteeship in the first place. This new information is not "fruit from a poisoned tree" as has been suggested by plaintiffs at oral argument. It would be equally imprudent for this Court to undo the actions taken by the parent union merely because that information was also considered which had formed the basis of Coia's initial emergency action.

At the December 5 Hearing Elbaor, Hammon and Ray testified as to facts which, in combination with all of the information contained in the November 1 Motion papers and aside from the question of the legitimacy of Coia's emergency action, constituted grounds for the continuation of the trusteeship. This information, concerning the absence of fidelity bonds, the breakdown of the collection system despite its high cost, and the unauthorized per capita tax on dues, was presented in the Findings. Even in spite of the possibility that Gudger and Barnes might have been biased by their participation in the November 9 vote on the question of the emergency imposition, they heard this new evidence for the first time and no basis has been offered upon which it can be inferred that Gudger and Barnes were biased as

to the new evidence. As regards the new evidence, the December 5 Hearing functioned as a *de novo* proceeding. Further, no authority has been presented indicating that the Special Hearing Panel was required to disregard that information that was available on November 9, the date of the imposition of the trusteeship.

According to the plaintiffs, the new evidence was improper since by the express terms of the notice for the December 5 Hearing, its purpose was the review of the basis for the emergency imposition. This deficiency does not invalidate the Panel's consideration of evidence acquired by the Trustee after the notice was issued, for two reasons. First by the express requirements of LIUNA constitution, the hearing was to take place no more than sixty days after the trustee's appointment. The constitution requires the parent union to review the initial decision by the executive to impose the trusteeship, and to determine whether the trusteeship should be continued. This provision deals with actions taken under *emergency* conditions--the volatility and emergent nature of circumstances which surround the process are contemplated by its procedural structure. Thus, **\*836** the constitution neither expressly nor implicitly requires that the hearing be limited to a snapshot of the facts as they existed at the time the executive reached the decision to impose the trusteeship.

Second, plaintiffs were not prejudiced by this asserted defect. This can be seen in the fact that no request was made for adjournment or for an opportunity to submit additional evident other than the request for the production of Frank Lupo and Roger Levin.

On January 17 the General Executive Board reviewed and adopted the Findings, including the new evidence. Their vote was one to (i) ratify the emergency imposition of the trusteeship, which action is now moot since this Court has found that the emergency trusteeship was improperly imposed, and (ii) to continue the trusteeship. The new evidence, as summarized in the Findings, together with the information that was available on November 9, was sufficient grounds for this vote, and the validity of that vote should not be second-guessed by this Court. To require new notice of a hearing and a rehearing of the information justifying the imposition of a trusteeship would, at this stage,

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

884 F.Supp. 823, Mason Tenders Dist. Council of Greater New York v. Laborers' Intern. Union of    **Page 15**
North America, (S.D.N.Y. 1995)

be an empty and expensive exercise given all that is now know about the affairs of the District Council.

[17] Thus, in spite of this Court's finding that the emergency imposition of the hearing was invalid because of procedural defects and because no good faith basis existed for such action, since the December 5 Hearing and the vote of January 17 served the function of a *de novo* hearing on the continuation of the trusteeship, plaintiffs fail to meet the first step of their burden regarding success on the merits. Since the defect was cured by subsequent proceedings, the presumption of validity required by LMRDA obtains during the second step, in which plaintiffs must show by clear and convincing evidence that Coia and LIUNA acted in bad faith or for an improper purpose in imposing the trusteeship.

### (c) *Plaintiffs Have Not Shown Bad Faith or Improper Purpose*

Plaintiffs assert that the trusteeship was imposed because, after learning of the Draft RICO Complaint, Coia sought to avoid his own prosecution and the taking over of LIUNA, both of which are contemplated therein. As set forth above, the imposition of the trusteeship in November of 1994 was not warranted on an emergency basis, yet the trusteeship was justified based upon all the evidence available to the General Executive Board in January of 1995. The question thus remains as to whether or not, after the curative effect of the December 5 Hearing and the January 17 vote by the General Executive Board of LIUNA, the decision to *maintain* the trusteeship was made in bad faith or for a purpose not authorized by the LIUNA constitution.

By December 5, all parties involved knew of the Civil RICO Complaint and November 1 Motion on the one hand, and the Draft RICO Complaint on the other. As already discussed, the malfeasance and improprieties discovered after the imposition of the trusteeship, together with the information provided by the Government's Civil RICO Complaint and the November 1 Motion papers, comprised sufficient reason to maintain the trusteeship. The most that can be said, then, is that Coia's intent to avoid his own prosecution or LIUNA's, or any similar intent of any other member of the General Executive Board, was an additional motive to that already stated. Without deciding whether plaintiffs have

shown by clear and convincing evidence that this motive was present, it must first be noted that this will only invalidate the trusteeship if no other valid motive was present.

[18][19] One legally permissible purpose is all that is required for a valid trusteeship. *See National Assoc. of Letter Carriers v. Sombrotto*, 449 F.2d 915, 923 (2d Cir.1971); *C.A.P.E. Local 1983 v. I.B.P.A.T.*, 598 F.Supp. 1056, 1075 (D.N.J.1984). Since the valid purpose of ridding the District Council of the improprieties uncovered after the imposition of the trusteeship was found by the Special Hearing Panel at the December 5 Hearing and subsequently adopted by the General Executive Board at the January 17 meeting, plaintiffs fail to show by clear and convincing evidence that Coia and LIUNA acted to maintain the trusteeship in bad faith **\*837** or for an unauthorized purpose. Similarly, given that at least one valid motive was present when the General Executive Board voted to continue the trusteeship, plaintiffs have failed to raise sufficiently serious questions going to the merits to make them a fair ground for litigation.

Thus, plaintiffs have failed to show a likelihood of success on the merits and their motion for a preliminary injunction must be denied.

### C. *Summary Judgment is Denied*

[20] Although plaintiffs were unable to prevail under the doubly specific standards applicable to their motion for injunctive relief, it remains to be determined whether plaintiffs are entitled to compensation for damages suffered, if any, arising between the time of the improper emergency imposition of trusteeship and the curative hearing and vote. Since this is an issue for the trier of fact, LIUNA's motion for summary judgment is denied.

### D. *Res Judicata Does Not Bar Plaintiffs' Motion*

LIUNA asserts that plaintiffs' claims regarding the validity of the imposition of the trusteeship are barred by the doctrine of *res judicata* because the Consent Decree executed in the Civil Rico Action contains a provision whereby the emergency imposition of the trusteeship and the ensuing Special Hearing and meeting of LIUNA's Executive Board are agreed to and validated by the parties to the Civil Rico Action, including the plaintiffs in this

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

884 F.Supp. 823, Mason Tenders Dist. Council of Greater New York v. Laborers' Intern. Union of    **Page 16**
North America, (S.D.N.Y. 1995)

action. Although LIUNA has virtually abandoned this argument since submission of their brief on the subject, it need be briefly examined.

[21][22] The doctrine of *res judicata* bars re-litigation of the same claims between the same parties after a matter has once been resolved by a court of competent jurisdiction. *Stone v. Williams,* 970 F.2d 1043, 1054 (2d Cir.1992). *Res judicata* also precludes litigation of all claims that could have been raised in the earlier proceeding, whether or not they were actually raised and litigated. *Greenberg v. Board of Governors of the Federal Reserve System,* 968 F.2d 164, 168 (2d Cir.1992); *Harborside Refrigerated Services, Inc. v. Vogel,* 959 F.2d 368, 372 (2d Cir.1992). Defendant cites *Foster v. Hallco Manufacturing Co.,* 947 F.2d 469, 476 (Fed.Cir.1991) and *In re Medomak Canning,* 922 F.2d 895 (1st Cir.1990) for the proposition that resolution of claims by consent decree has the same *res judicata* effect as a litigated resolution. This general proposition is uncontroversial, but neither case lends any support to LIUNA's attempt to apply *res judicata* to a consent decree not executed by the parties against whom the doctrine is sought to be applied. Neither do these cases give any guidance concerning a consent decree in which the issue sought to be precluded is only implicitly resolved.

[23][24] It is said that a prerequisite to the application of the doctrine of *res judicata* is that the party against whom the doctrine is sought to be applied must have been provided with a full and fair opportunity in the prior proceeding to litigate the claim sought to be precluded. *See Poyner v. Murray,* 508 U.S. 931, ----, 113 S.Ct. 2397, 2398, 124 L.Ed.2d 299 (1993); *Montana, et al. v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). The assertion that the plaintiffs in this case consented to the imposition of the trusteeship in the Consent Decree is not supported by a reading of the Decree. Following the recitals, Paragraph 1 of the Decree goes on to state:

*Incorporation of Recitals.* The foregoing recitals are incorporated by reference as though fully set forth in this paragraph and as so incorporated are agreed to by the Government and the MTDC.

LIUNA's attempt to apply claim preclusion based on this oblique and general language cannot withstand scrutiny.

The traditional view of *res judicata* held that "a 'right, question or fact *distinctly put in issue and directly determined* by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies.' " *Montana, et al.,* 440 U.S. at 152, 99 S.Ct. at 973 (1979) (quoting *Southern Pacific R. Co. v. United States,* 168 U.S. 1, 48-49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897)) (emphasis added). Although this **\*838.** concept has been expanded by courts over the years to include issues which could have been, but were not raised, clarity and specificity must still concern this Court in the application of claim preclusion to the parties in this proceeding. That the recitals in the Consent Decree were "agreed to" could merely constitute an agreement that the events recited actually happened.

[25] According to LIUNA plaintiffs could have raised the invalidity of the trusteeship in opposition to the Consent Decree, even though that issue was not expressly and specifically resolved by the Decree. But this assertion is not directly supported by law. LIUNA cites cases which hold that *res judicata* applies to issues not litigated but which could have been litigated in a prior action; and cases which hold that *res judicata* applies to issues resolved by consent decrees. However, defendant offers no decisions that hold, or even permit the possibility that, *res judicata* applies to issues not litigated but which could have been litigated prior to resolution of a cause of action by consent decree. The policy of judicial economy well supports the idea that if a trial or dispositive motion practice took place in a prior action, a party may be held responsible, *ex post,* for those issues which it could have litigated but did not. In those cases, the judicial system has expended substantial time and resources, the parties have had their opportunity to raise all issues arising out of the underlying set of facts and circumstance, and to accord a second opportunity when the first would have and should have sufficed is wasteful. However, judicial economy does not support claim preclusion when the prior proceedings have gone no further than resolution of some issues by consent of some parties, and the system's expenditure of time and resources has been substantially less than in the case of trial or dispositive motion practice.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

884 F.Supp. 823, Mason Tenders Dist. Council of Greater New York v. Laborers' Intern. Union of    **Page 17**
North America, (S.D.N.Y. 1995)

For all of these reasons, defendant's motion for judgment on the pleadings based on the principle of *res judicata* must be denied.

*Conclusion*

Upon the findings and conclusions stated above, plaintiffs' motion for a preliminary injunction is denied.    Defendant's motion for judgment on the pleadings is denied, as is its motion for summary judgment.

It is so ordered.

(FN1.) Elbaor presently holds the position Trustee over the District Council, imposed by Coia's order, as discussed *infra*.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works