Law Office of Nathaniel B. Smith
111 Broadway - Suite 1305
New York, New York 10006
212-227-7072

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
-----------------------------------------------------x

DANNY ATTENBOROUGH, et al,

       Plaintiffs,

-against--

CONSTRUCTION AND GENERAL
BUILDERS LABORERS LOCAL 79,

       Defendant.
-----------------------------------------------------x

Misc. # 1:06-MC-000006-JR

S.D.N.Y. Docket No.
03 Civ. 4399 (RJH)(THK)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO COMPEL**

*Preliminary Statement*

If LIUNA's position is the law, then every corporation in the county can hide evidence of wrongdoing by hiring a lawyer and an investigator and funneling incriminating evidence into a department run by the lawyer and the investigator. If that is the law, then no corporate entity will ever have to turn over incriminating evidence in its possession - - all incriminating evidence will disappear into a black hole.

That is not the law. Privileges are narrowly construed because they are in derogation of the search for the truth, and LIUNA's unprecedented claims about the breath of the attorney-client and work-product privileges must fail.

RECEIVED

FEB 1 6 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

LIUNA cannot establish that the attorney-client privilege applies to the information plaintiffs seek because plaintiffs are not seeking private communications between the GEB Attorney and LIUNA. Plaintiffs are seeking information from third-parties about violations of job referral rules.

LIUNA cannot establish that the work-product privilege applies to its own internal disciplinary proceedings. Those activities are part of the ordinary course of business of any large corporate entity and therefore are not done in anticipation of litigation such that an attorney's private work in preparing for litigation ought to be protected.

The "grave danger" to the reform efforts and the exaggerated claims of "witness fear" are conclusory, unsubstantiated arguments designed to encourage the Court to extend the purported privileges to places that no Court has gone before. Notably, LIUNA fails to provide the Court with the unreported decisions it has obtained in the past on the scope of its purported privileges.[1] Thus, the Court should not be manipulated by the false spector of "grave dangers" into finding a privilege that otherwise does not exist simply because a party makes generalized and non-specific claims that disclosure of the sources of incriminating evidence might make a generic witness uncomfortable. All evidence has that effect and there has been no particularized showing by LIUNA that any particular witness has requested or is in need of protection.

---

[1] Motion Exhibit 2; Luskin letter, dated November 14, 2005, at pp.1-2.

*Argument*

*1. The Attorney-Client Privilege.* Plaintiffs demonstrate in their opening papers that the attorney-client privilege only applies where the information sought would reveal a confidential communication from the client. LIUNA glides over this point and argues that all information from whatever source must be privileged. That is not the law because the heart of the privilege is the protection of the confidential statements by a client to a lawyer for the purpose of securing legal advise. Indeed, the decision in *Osterneck* is directly on point. There, the Court held that a lawyer hired to do investigative work to enforce a consent decree cannot invoke the attorney-client privilege because the lawyer was not hired to provide legal analysis for the corporation.

*2. The Work-Product Privilege.* Recognizing the weakness of the attorney-client argument, LIUNA pressed the work-product privilege. Yet *Osterneck* forecloses that claim because there the court held that the corporate defendant could not invoke the work-product privilege because the internal investigative work done by the lawyer under the consent decree was not done in anticipation of litigation.

That decision applies with equal force in this case. LIUNA suggests - - without any case law to support it - - that information it obtains from third parties or union members about hiring hall violations is magically transformed into its "work product" because that information might be used for an internal disciplinary charge brought by LIUNA against a union member. The speculative argument must be rejected to two reasons:

3

First, LIUNA cites no case to support the claim that internal discipline by a corporate entity is litigation for purposes of the work-product doctrine, and there is good reason why no case has so held. If that were the law, then every Human Resource Department in the county could claim that all negative information about any employee was protected by the work-product privilege on the theory that the negative information could be used in an internal disciplinary process against the employee. No case goes that far.

Second, LIUNA fails to address the undisputed fact that the GEB Attorney issues public reports on his activities and that his proceedings are public records. The LIUNA disciplinary rules specifically provide that "the documents on the docket and the docket entry sheet may be examined by members of LIUNA or their representatives upon request."[2] Indeed, the GEB Attorney has represented to the membership that he will *not* seal disciplinary records to protect the confidentiality of ongoing investigations:

> LIUNA members should know that the Ethics and Disciplinary Procedures guarantees the right of every member to review the file of any closed case. Once a case is closed, the record is transmitted by the Independent Hearing officer to the LIUNA General Secretary-Treasurer, where it is available for review. In one instance, involving the charges against former LIUNA Vice President John Serpico, the GEB Attorney agreed to seal the record of the disciplinary proceeding, in part to protect the confidentiality of ongoing investigations. That decision was unwise; *in the future, the GEB Attorney will not enter into any*

---

[2] Motion Exhibit 3; Rules of Procedure at p.11, ¶2(f).

4

> *agreements disposing of charges that limit the right of LIUNA members to review the record in any case.*[3]

Third, the consent decree in this case provides a specific waiver of both the attorney-client and work-product privileges. While is its correct that the contingent consent decree was never signed by a United States District Court Judge, it was signed by LIUNA and the Justice Department, and the powers and responsibilities of the GEB Attorney in the Consent Decree track the powers and responsibilities that the GEB Attorney already had.[4] More important, the Consent Decree has - - like Damocles's sword - - provided the framework under which the GEB Attorney and the IG must operated since the inception of their positions. Under these circumstances, a specific and unequivocal waiver in the contingent consent decree supports the conclusion that the GEB Attorney's role is nothing like the traditional role of a lawyer representing a client and that the parties intended that the GEB Attorney's functions would be public, not private.

Finally, LIUNA claims that plaintiffs have failed to establish a substantial need for the information on the ground that plaintiffs have had the opportunity to obtain the same information directly from Local 79. Indeed, Local 79 submits opposition papers also claiming that plaintiffs have simply squandered the opportunity to obtain the information from Local 79's files. That is simply a gross distortion of the facts.

---

[3] Report from the GEB Attorney, *The Laborer*, September/October 1995; attached as Exhibit 1 (emphasis added).

[4] *Compare Ethics and Disciplinary Procedures* pp.2-3 (Motion Exhibit 3) *with* Consent Decree ¶¶18-26 (Motion Exhibit 4). *See also* Summary of LIUNA-Government Agreement at pp. 13-14 (Motion Exhibit 3) (LIUNA compares the existing offices with those provided for in the Consent Decree, including the GEB Attorney position).

5

Earlier this year Local 79 permitted the undersigned to inspect records that contained files on which laborers were sent out on which jobs. The records consisted primarily of shop steward reports stating who was working at a particular job site. Nothing in those records reflected how those laborers got the job referrals. Similarly, plaintiffs have had access to the out-of-work lists, which list the laborers who are looking for work at a particular point in time. An example is attached as Exhibit 2 and the terms and methods of bypassing the out-of-work list are described in the Third Amended Complaint[5]. As the Court can see, the out-of-work list does not and cannot provide the vital information about who is able to *bypass* the out-of-work list and get work from their union cronies. This evidence - - which by its nature is secretive - - must often come from individuals in a unique position to obtain or overhear specific information about how a particular laborer got a particular job. That is the information that LIUNA and Local 79 do not want the plaintiffs to obtain. That is the information that the Office of the GEB Attorney was designed to collect. That is the information that the Court should order produced.

*Conclusion*

The attorney-client privilege protects a client's confidential communications to private counsel. The work-product privilege protects an attorney's zone of privacy while working on pending or anticipated litigation. Neither of these concerns are implicated in this case and accordingly the motion should be granted.

---

[5] Motion Exhibit 5 at ¶¶53-73.

6

Under the penalties of perjury under the laws of the Unites States I affirm that the foregoing is true and correct.

Dated: New York, New York
February 15, 2006

_____
Nathaniel B. Smith (NS 4487)
Attorneys for Plaintiffs
111 Broadway, Suite 1305
New York, New York 10006
(212) 227-7062

CERTIFICATE OF SERVICE

I, Nathaniel B. Smith, an attorney for Plaintiff, hereby certify that on February 15, 2006, I caused a copy of the within Motion to be served upon:

Robert D. Luskin, Esq.
Office of the GEB Attorney
Laborers' International Union of
    North America
2550 M Street, N.W.
Washington, D.C. 20037-1350
202-457-6190 (phone)
202-457-6315 (fax)
Attorney for Third-Party Witnesses

Joseph Vitale, Esq.
Cohen, Weiss and Simon, PC
330 West 42nd Street
New York, New York 10036
212-563-4100
212-695-5436 (fax)
Attorney for Defendant

by United States mail, postage prepaid and by telecopier.

_____
Nathaniel B. Smith (NS 4487)